[No. 14822-0-III.   Division Three.   March 11, 1997.]

*In the Matter of the Marriage of* DONNA ROSEMARY (KIVETT) CAPETILLO, *Appellant, and* DAVID LESLIE KIVETT, SR., *Respondent.*

*David A. Elofson* and *Menke Jackson & Beyer*, for appellant.

*Sarah G. Ottem* and *Gevurtz, Menashe, Larson & Yates,* for respondent.

SCHULTHEIS, J. — In Washington, the equitable defense of laches may be applied to estop a custodial parent from recovering past-due child support. Donna Capetillo sought to recover 10 years' worth of past-due child support from her ex-husband, David Kivett. Mr. Kivett claimed he had not paid child support because he thought his children had been adopted by their stepfather. The trial court applied laches and denied Ms. Capetillo recovery. On appeal, she contends the evidence does not support the trial court's findings. She also argues her delay in enforcing the child support obligation does not qualify as unreasonable because she filed suit within the statute of limitations. We reverse and remand.

## FACTS

Ms. Capetillo and Mr. Kivett separated in June 1980, after eight years of marriage. Within the month, Mr. Kivett had moved to North Carolina, where he still resides. The divorce was final in April 1981. Ms. Capetillo was granted custody of the children, ages four, five and seven. Mr. Kivett received "reasonable and liberal rights of visitation," including the right to telephone at reasonable times. He was ordered to pay child support of $50 per child per month, pay $900 in back child support, maintain medical and dental insurance for the children (if available through his employment) and maintain life insurance for their benefit. The record shows that Mr. Kivett did not comply with any of these orders.

Ms. Capetillo remarried in 1981, a month after the

divorce was final. Mr. Kivett visited the children for about a week that year, but has not seen them since. He claims he did not call the children at his ex-wife's house because he did not know her telephone number. Somewhat inconsistently, he also claims he called his ex-wife in 1983, at which time she reportedly told him he could not see or talk to the children. After this discussion, he asserts, he stopped attempting to talk to the children or to send them gifts.

Ms. Capetillo admits she asked Mr. Kivett to leave the state after the separation. She claims the children were afraid of him because he was verbally and physically abusive to them. She also asserts he never asked for visitation (beyond the one trip to Yakima in 1981) and never sent any money. Within two years after her remarriage, she told Mr. Kivett her husband wanted to adopt the children. Mr. Kivett reportedly said he would sign adoption papers if he would never have to pay child support. The Capetillos dropped the idea of adoption when they came to believe it was impossible while Mr. Kivett was alive.

Although the children entered elementary school with the Kivett surname, one by one they adopted the name Capetillo. All three were Capetillos by 1984. Ms. Capetillo claims they chose their stepfather's surname on their own, without her encouragement.

In 1988, Mr. Kivett called to tell the children his mother was dying. During his conversation with Ms. Capetillo, she told him he had no right to see the children because he had not paid support. She also threatened to have him arrested for non-support if he came to Washington. He never called the children or his ex-wife after that. When asked why she waited until 1994 to collect the past-due child support, Ms. Capetillo replied that she never would have attempted it, but her children asked her to. Before that time, she asserted, she would not have been able to afford to hire a lawyer every time he missed a $150 payment.

Mr. Kivett called his children's school in 1984 and was

told they were using the name Capetillo. Thinking that a student must have "legal documents" in order to go to school with a stepparent's name, he claims he started believing the children must have been adopted. At trial, he admitted he did not know how they could have been adopted without his signature. But he thought his brother, or maybe an attorney, told him Mr. Capetillo could run a notice in the local North Carolina newspaper and then adopt. Although Mr. Kivett read all of the paper every day, he did not see a notice. Nevertheless, he assumed the notice must have been put in there. He called the Yakima courthouse at some point and was told that even if adoptions had occurred, he could not find out because the records are sealed.

Mr. Kivett remarried in 1985 and became stepfather to two small children. While working as a manager of an auto body shop in 1986 or 1987, he suffered a back injury. He then worked as a barber, but continued to suffer back pain. Ultimately, Mr. Kivett had two surgeries — in 1988 and 1989 — to treat herniated discs. After the surgeries, he had to cut back his work hours from around 50 hours a week to around 32 hours a week. He received a $20,000 settlement for the back injury in 1989. As he admitted in court, all of this money was spent to pay bills and other necessities incurred while he was out of work for one and one-half years. Nonetheless, he insisted he would have saved the money if he had known he would have to pay child support.

In July 1994, Ms. Capetillo moved for judgment on the child support owed from July 1984 to September 1994.[1] At the time she filed, her youngest child was 17, but he turned 18 at the end of August. The total amount for past-due support was $15,700, with interest amounting to $10,938. After hearing the testimony of both parties, the trial court concluded that Ms. Capetillo waited an unreasonable time

---

[1]Because she waited until July 1994 to move for judgment, Ms. Capetillo waived her right to collect past-due support owed from 1981 to July 1984. RCW 6.17.020.

to enforce the child support obligation and that Mr. Kivett suffered damage due to this delay. The court found that Mr. Kivett detrimentally relied on his ex-wife's failure to pursue support when he (1) altered his work hours, (2) dissipated his settlement funds, (3) entered into a "blended" family marriage, and (4) forewent opportunities to modify support based on his back injury or his blended family. Consequently, the court applied the defense of laches to estop Ms. Capetillo from collecting the past-due child support. On the other hand, the trial court concluded that Mr. Kivett had failed to prove the defense of equitable estoppel by clear and convincing evidence. This appeal followed.

## DISCUSSION

### I. Doctrine of Laches

■ Ms. Capetillo contends the evidence does not support the trial court's findings of fact, which in turn do not support the elements of the doctrine of laches. In particular, she argues her delay in seeking the past-due support was reasonable and Mr. Kivett did not suffer damage as a result of the delay. On review, we ask whether the findings are supported by substantial evidence and whether the trial court has made an error of law. *In re Marriage of Stern*, 68 Wn. App. 922, 929, 846 P.2d 1387 (1993).

■ Generally, child support payments become vested judgments as the installments become due. *Hartman v. Smith*, 100 Wn.2d 766, 768, 674 P.2d 176 (1984); *Schafer v. Schafer*, 95 Wn.2d 78, 80, 621 P.2d 721 (1980). Money paid to the custodial parent for past-due support serves to reimburse the custodian for moneys actually expended. *Hartman*, 100 Wn.2d at 768. The accumulated child support judgments generally may not be retrospectively modified. *Id.; In re Marriage of Stoltzfus*, 69 Wn. App. 558, 561-62, 849 P.2d 685, *review* denied, 122 Wn.2d 1011 (1993). In special circumstances, however, Washington courts will apply traditional equitable principles to mitigate the harshness of particular claims for retrospective support if

it will not work an injustice to the custodian or the child. *In re Marriage of Shoemaker*, 128 Wn.2d 116, 122-23, 904 P.2d 1150 (1995); *In re Marriage of Hunter,* 52 Wn. App. 265, 270, 758 P.2d 1019 (1988), *review denied,* 112 Wn.2d 1006 (1989).

Here, the trial court concluded that the facts supported application of the equitable defense of laches. The defendant who asserts laches must prove: (1) the plaintiff had knowledge or a reasonable opportunity to know of the facts constituting a cause of action; (2) commencement of the action was unreasonably delayed; and (3) the defendant was damaged by the delay. *Hunter,* 52 Wn. App. at 270; *In re Marriage of Watkins*, 42 Wn. App. 371, 374, 710 P.2d 819 (1985), *review denied,* 105 Wn.2d 1010 (1986). It is undisputed that Ms. Capetillo had knowledge of the facts constituting a cause of action. Only the trial court's conclusions that her delay in seeking enforcement of the child support judgments was unreasonable and that Mr. Kivett was damaged by the delay are disputed.

Ms. Capetillo's action is not barred by the statute of limitations. RCW 6.17.020 (10 years). "Absent unusual circumstances, the doctrine of laches should not be invoked to bar an action short of the applicable statute of limitation." *Hunter,* 52 Wn. App. at 270. *Accord In re Marriage of Sanborn,* 55 Wn. App. 124, 128, 777 P.2d 4 (1989). Accordingly, the trial court had to decide whether unusual circumstances made Ms. Capetillo's delay unreasonable. *See Sanborn,* 55 Wn. App. at 128 (delay of 28 months not unreasonable); *Hunter,* 52 Wn. App. at 270-71 (facts that father was unable to pay support during seven-year delay and mother knew it was ill-advised to seek legal action were not unusual circumstances that proved the delay was unreasonable). Ms. Capetillo claimed that she could not afford to hire a lawyer every time Mr. Kivett missed a payment. Nothing in the record indicates he ever paid her anything for the children. Both parents agree that Ms. Capetillo did not want Mr. Kivett to enforce his visitation rights. Her reluctance to pursue past-due support does not

appear unreasonable, considering her testimony that he could be abusive to the children. Consequently, the record does not show "unusual circumstances" justifying application of laches.

■ Even if the delay was unreasonable, Mr. Kivett also had to prove he suffered damage as a result. *Sanborn*, 55 Wn. App. at 128; *Hunter*, 52 Wn. App. at 270. A defendant cannot prove damage simply by showing he is having to do now what he has been legally obligated to do for years. *Sanborn*, 55 Wn. App. at 128; *Hunter*, 52 Wn. App. at 271. The trial court found that Mr. Kivett was damaged in the following ways: he altered his work hours, he dissipated his settlement funds, he entered into a blended family marriage, and he failed to seek a support modification based on either his back injury or his blended family obligation.

■ While the record shows that each of these circumstances occurred, it is not at all clear that they occurred in reliance on Ms. Capetillo's failure to pursue child support. By Mr. Kivett's own admission, he altered his work hours because he was physically unable to stand for longer periods. He testified that he had to spend all the settlement money on bills and other necessities because he was unemployed for one and one-half years. He never testified that he would not have remarried if he had known he still owed child support. As for the court's finding that Mr. Kivett forewent support modification, nothing in the record supports this finding. His testimony does not indicate that he considered modification in the early years — when he was unemployed or in the army — before he came to believe the children were adopted. All he stated was that he stopped worrying about the support payments in 1983, after his ex-wife told him she did not want him around the children.

Finally, Mr. Kivett cites *Watkins*, 42 Wn. App. 371, for the application of laches to past-due child support. We find *Watkins* distinguishable.

In *Watkins*, the father testified that he and the mother

met with a family court caseworker and reached an agreement whereby the father waived his visitation rights and the mother waived his support obligations. The mother denied that they had reached this agreement, but the trial court found support for the agreement in the facts that she left the state immediately afterward and did not request child support. Assuming the existence of that agreement, the Court of Appeals held that the father detrimentally relied on the mother's five-and-one-half-year delay in seeking enforcement of the obligation. The court supported this decision with findings that the father did not seek visitation during this period and "incurred financial obligations he would otherwise have forsaken . . . ." 42 Wn. App. at 375. These obligations are not described in the opinion.

In the case before us, however, the trial court entered no finding that Ms. Capetillo agreed, by word or conduct, to excuse Mr. Kivett's support obligation. Its finding that he incurred financial obligations and dissipated funds in reliance on her failure to enforce is unsupported by the evidence. The evidence here does not compel us to adopt the result reached in *Watkins*. We also note that both *Sanborn,* 55 Wn. App. at 128 n.2, and *Hunter,* 52 Wn. App. at 270 n.1, have expressed reservations with the holding in *Watkins*.

■■ In light of the Legislature's finding that "there is an urgent need for vigorous enforcement of child support," RCW 26.18.010, equitable relief from past-due support obligations should be limited to those cases where enforcement would create a severe hardship on the obligor-parent and where the facts support traditional equitable remedies. Here, Mr. Kivett's hardship was created by his own failure to pay, to inquire, or to seek modification. Moreover, the facts simply do not fulfill the elements of laches. Accordingly, the trial court's application of laches does not rest upon tenable grounds and is reversed for abuse of discretion. *Watkins,* 42 Wn. App. at 375.

## II. Equitable Estoppel

Mr. Kivett contends the trial court erred in concluding that he did not prove the elements of equitable estoppel. A defendant who asserts equitable estoppel must prove that: (1) the plaintiff asserted a statement or acted inconsistent with a claim afterward asserted; (2) the defendant acted on the faith of that statement or act; and (3) the defendant would be injured if the plaintiff were allowed to contradict or repudiate the statement or act. *Hunter*, 52 Wn. App. at 271. "Equitable estoppel is not favored, and the party who asserts it must prove every element with clear, cogent, and convincing evidence." *Sanborn*, 55 Wn. App. at 129; *Mercer v. State*, 48 Wn. App. 496, 500, 739 P.2d 703, *review denied*, 108 Wn.2d 1037 (1987).

Although the trial court found that equitable estoppel had been proved by a preponderance of the evidence, it found that the evidence was not clear, cogent and convincing. Mr. Kivett contends Ms. Capetillo told him she did not want his money. He also argues that by allowing or encouraging the children to take the name Capetillo, she indicated the children had been adopted. The trial court entered no finding that Ms. Capetillo told Mr. Kivett she did not want the child support. Although the court did find that she and her new husband encouraged the children to take their stepfather's surname, there was no showing that by this encouragement she intended to tell Mr. Kivett the children had been adopted. Most important, the record does not show that Mr. Kivett suffered damage as a result of his belief that the support obligation would never be enforced. The findings support the trial court's conclusion that the elements of equitable estoppel were not met.

### III. Attorney Fees

Ms. Capetillo requests attorney fees. As the prevailing party in an action to enforce a support order, she is entitled to an award of costs and attorney fees at the trial level. RCW 26.18.160; *Hunter*, 52 Wn. App. at 273. She is also entitled to fees and costs on appeal. *Id.* at 273-74.

Reversed and remanded for entry of judgment in Ms. Capetillo's favor. Ms. Capetillo is awarded attorney fees and costs incurred at trial and on appeal.

SWEENEY, C.J., and THOMPSON, J., concur.

Review denied at 132 Wn.2d 1011 (1997).