[No. 19823-5-III. Division Three. February 21, 2002.]

*In the Matter of the Marriage of* CATHERINE M. DICUS, *Respondent*, and RONALD A. DICUS, *Appellant*.

348

*Robert R. Cossey* and *Melanie J. Caldwell*, for appellant.

*Gary R. Stenzel* (of *Stenzel & Price*), for respondent.

Brown, A.C.J. — Today, we consider Ronald Dicus's appeal of the trial court's order on revision denying his February 2000 motion for child support credits for social security payments paid for the benefit of his children in

1984 to 1990. Under our facts, the trial court properly relied on the doctrines of res judicata and laches to bar Mr. Dicus's claimed offset directly attacking a February 1999 child support order and indirectly attacking or seeking revision of even earlier orders. Accordingly, we affirm.

## FACTS

Catherine Dicus (now Brady) and Mr. Dicus recount their marriage dissolution proceedings initiated in 1983. In 1984, their children, Amanda and Paul, began receiving social security benefits traced to Mr. Dicus. In 1985, without specific reference to the federal benefits, a decree obligated Mr. Dicus to pay $125 per month for each of the two children.

In 1996 the parties, without final action, filed various motions to vacate, modify or clarify the decree relative to the federal benefits and Mr. Dicus's required transfer payment for child support. The parties' correspondence included a proposal by Mr. Dicus's former attorney for child support of $500 per month, $250 of which would come from Mr. Dicus's social security benefits. Later, Mr. Dicus moved to modify support to $150 per month per child with the social security payments in full satisfaction.

Without change to the decree, the federal benefits continued to 1990. Then, Mr. Dicus's federal benefits became disputed stemming from Mr. Dicus's unreported work. Ms. Dicus received a hardship waiver for the alleged overpayments for the children. Mr. Dicus is still appealing his social security entitlements in federal court.

Thereafter, Ms. Dicus received State benefits. In 1994, the Attorney General's Office (AG) filed a petition for modification of child support on behalf of Ms. Dicus. The petition sought not less than $426 per month total. The AG's worksheet calculated Mr. Dicus's basic child support obligation at $506 per month.

On July 7, 1994, a court commissioner entered a child support order setting Mr. Dicus's monthly obligation at

$250 per child. The total obligation was set to start at $375 per month from June 1, 1994 through November 30, 1994, and then increase to $500 per month starting December 1, 1994. The order stated: "The court may review the support amount after a final determination of respondent's obligation for back payments due to Social Security has been completed." Clerk's Papers (CP) at 299. Notably, in 1990, the Legislature enacted RCW 26.18.190(2), requiring social security payments paid to the children of a recipient be counted toward satisfaction of the recipient's child support obligation. LAWS OF 1990, 1st Ex. Sess., ch. 2, § 17.

In September 1995, apparently without follow-through, Mr. Dicus, pro se, petitioned for support modification on the basis that he had become unemployed. Relying on his own worksheets, Mr. Dicus contended "$100 per child per month would be proper." CP at 315. Mr. Dicus continually fell behind in his child support obligation until he owed more than $9,000 in 1996 and $17,000 in 2000. In November 1998, Commissioner Clark found Mr. Dicus voluntarily unemployed and Paul had come of age leaving an obligation of $155 per month for Amanda alone.

In February 1999, Mr. Dicus filed objections to Ms. Dicus's proposed order based on Commissioner Clark's November 1998 memorandum opinion. He objected that Ms. Dicus failed to consider the amount of social security benefits received "from the time of the divorce until 1990 in determining the amount of back support owed." CP at 69. Further, with particular reference to his September 1995 petition, and while conceding "the matter should have been heard sooner," Mr. Dicus objected to the modification amount not beginning until September 1996. CP at 70.

On February 10, 1999, Commissioner Clark filed an order on modification of child support and an explanatory letter. The order, showing a specific breakdown, rendered judgment for $8,220 in child support from January 1, 1996 to January 31, 1999. The order partly stated: "Support owed prior to January 1996 is reserved, and may be considered by motion on the Family Law docket." CP at 80. Because

Commissioner Clark rejected a request to include an alleged child support debt of over $6,000 prior to January 1996, the order and letter required a new interest calculation.

Among other later motions, Ms. Dicus asked for judgment for the interest calculation required by Commissioner Clark in February 1999. In a February 2000 counter motion, Mr. Dicus asked to have an offset against all sums ordered in February 1999 due to his alleged overpayments to Ms. Dicus, including the 1984 to 1990 social security payments still being disputed in federal court. In September 2000, Commissioner Grovdahl entered two orders. First, based upon res judicata and laches, Commissioner Grovdahl denied Mr. Dicus's counter motion for credits for the alleged social security payments. Second, the Commissioner granted a limited money judgment mainly regarding the interest. Mr. Dicus then filed a motion solely to revise Commissioner Grovdahl's first order denying credits. Judge Bastine denied the motion, ruling:

> Then Commissioner Clark in her 2-99 order had ruled on that issue [credits] and reserved only the issue of respondent's pending social security claim which claim is still pending, and that laches and res judicata are found to prevail.

CP at 280. Mr. Dicus appealed.

## ANALYSIS

The issue is whether the trial court erred when denying Mr. Dicus's motion to revise Commissioner Grovdahl's order denying credits against the judgment in the February 1999 child support order for the alleged 1984 to 1990 social security overpayments, and concluding the doctrines of res judicata and laches apply to preclude the offset.

### A. Social Security Benefits

First applicable in 1990, RCW 26.18.190(2) provides:

> When the social security administration pays social security disability dependency benefits, retirement benefits, or survi-

vors insurance benefits on behalf of or on account of the child or children of a disabled person, a retired person, or a deceased person, the amount of benefits paid for the child or children shall be treated for all purposes as if the disabled person, the retired person, or the deceased person paid the benefits toward the satisfaction of that person's child support obligation for that period for which benefits are paid.

Even if Mr. Dicus was not statutorily entitled to an offset for the relevant period, trial courts had equitable discretion to allow an offset when not unfair to the custodial parent. *See In re Marriage of Hughes*, 69 Wn. App. 778, 781, 850 P.2d 555 (1993). After RCW 26.18.190(2), courts must allow the offset. *In re Marriage of Briscoe*, 134 Wn.2d 344, 348, 949 P.2d 1388, 971 P.2d 500 (1998). In *Hughes*, the trial court allowed an equitable offset for social security benefits paid from 1985 to 1990, prior to the enactment of RCW 26.18.190(2). *Hughes*, 69 Wn. App. at 779-80. In *Hughes*, the mandatory effect of the statute was noted, but the trial court's act of discretion was affirmed. *Hughes*, 69 Wn. App. at 782. Thus, *Hughes* does not support Mr. Dicus's argument against the lack of this trial court's discretion. RCW 26.18.190(2). *See Hughes*, 69 Wn. App. at 783-84.

■■ In any event, our case is procedurally distinct. In contrast to *Hughes*, we are not being asked to affirm an equitable offset; rather, Mr. Dicus seeks reversal of the trial court's discretion and remand for imposition of an offset for benefits received the decade before last. We are not persuaded RCW 26.18.190(2) is retroactive. *See Heidgerken v. Dep't of Natural Res.*, 99 Wn. App. 380, 387, 993 P.2d 934 (noting that appellate court presumes statute operates prospectively unless Legislature indicates retroactive application), *review denied*, 141 Wn.2d 1015 (2000).

Here, the original child support order did not discuss social security benefits. Mr. Dicus initially conceded the status quo by agreeing to pay $250 in the form of benefits in addition to $250 in direct payments. While Mr. Dicus later

sought to have his obligation reduced and offset by the benefits, he let the matter languish for 13 years.

In a variation of his retroactivity argument, Mr. Dicus argues RCW 26.18.190(2) was incorporated into Commissioner Clark's February 1999 order because parties in marriage settlements are generally presumed to contract with existing statutes, which are incorporated into the decree. *Briscoe*, 134 Wn.2d at 348. Mr. Dicus argues because the February 1999 order omits any reference to RCW 26.18.190(2), it must be automatically included in the order. We disagree.

First, the 1985 child support decree precedes the enactment of RCW 26.18.190(2). *See Briscoe*, 134 Wn.2d at 348 (noting parties are presumed to contract with reference to *existing* statutes). By contrast, in *Briscoe*, the parties entered the child support decree subsequent to the enactment of the statute. *Briscoe*, 134 Wn.2d at 348-49.

Second, when the events of 1984 through 1986 are viewed in context, it is apparent the parties originally intended the $125 child support obligation in the 1985 decree to be separate from the federal benefits the children were already receiving. Ms. Dicus's actions to "correct" the decree and the status quo offer from Mr. Dicus tend to indicate the decree's omission of the social security payments was an oversight not cured. Although Mr. Dicus changed his mind, he did not pursue the matter for some 13 years. In this light, it is doubtful Mr. Dicus had "clean hands" for purposes of claiming the equitable relief of offset to the support obligation amassed in 1984 to 1990. *See In re Marriage of Verbin*, 92 Wn.2d 171, 179-80, 595 P.2d 905 (1979) (discussing "clean hands" doctrine in child custody context).

Third, even if the 1999 order incorporated RCW 26.18.190(2), Mr. Dicus has not attempted to show an abuse of discretion in not applying the principle retroactively.

Next, Mr. Dicus contends Commissioner Clark reserved the offset matter in her February 1999 order. Judge Bastine noted in his oral decision, "all of the items up through the

date of this order in February of 1999 were resolved." Report of Proceedings at 25. We agree. The 1999 order merely states support prior to 1996 was reserved. And, like Judge Bastine, we interpret the order as pertaining to the unknown effect of the then existing, and still existing, federal litigation. Further, the November 1998 memorandum opinion underlying the 1999 order references retroactivity solely from September 1995, after federal benefits had terminated. The opinion refers to social security benefits, solely regarding Mr. Dicus's more recent, and yet unresolved, benefits denial. Thus, in context, any relevance is to support between September 1995 and January 1996.

Moreover, as noted by Judge Bastine, Mr. Dicus did not move to revise the 1999 decision, note the matter for reconsideration, or otherwise place the matter back before the court for decision until his counter motion for offset in February 2000. Judge Bastine's observations properly lead to res judicata and laches.

## B. Res Judicata

▇▇▇▇ Res judicata is defined with considerable precision in *Kelly-Hansen v. Kelly-Hansen*, 87 Wn. App. 320, 327-28, 941 P.2d 1108 (1997). Res judicata encompasses the concepts of both claim preclusion and issue preclusion. *Id.* at 327. Issue preclusion is grounded in the doctrine of collateral estoppel, when a subsequent action involves a different claim but the same issue. *Id.* Claim preclusion bars litigation of claims that were or should have been decided among the same parties below. *Id.* at 328. Here, where it appears the offset issue was never directly litigated below, res judicata in its claim preclusion form applies. *Id.*

> When res judicata is used to mean claim preclusion, it encompasses the idea that when the parties to two successive proceedings are the same, and the prior proceeding culminated in a final judgment, a matter may not be relitigated, or even litigated for the first time, if it could have been raised, and in

the exercise of reasonable diligence should have been raised, in the prior proceeding.

*Id*. at 328-29 (footnotes omitted).

Further,

[R]es judicata applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of the litigation, and which the parties, *exercising reasonable diligence*, might have brought forward at that time.

*Id*. at 329.

Although many tests have been suggested for determining whether a matter should have been litigated in a prior proceeding, there is no simple or all-inclusive test. Instead, it is necessary to consider a variety of factors, including, . . . whether the present and prior proceedings arise out of the same facts, whether they involve substantially the same evidence, and whether rights or interests established in the first proceeding would be destroyed or impaired by completing the second proceeding. In general, one cannot say that a matter should have been litigated earlier if, for some reason, it could not have been litigated earlier; thus, res judicata will not operate if a necessary fact was not in existence at the time of the prior proceeding, or if evidence needed to establish a necessary fact would not have been admissible in the prior proceeding. Similarly, one cannot say that a matter should have been litigated earlier if, even though it could have been litigated earlier, there were valid reasons for not asserting it earlier; thus, res judicata may not operate if the matter was an independent claim not required to be joined, or if the matter's omission from the prior proceeding actually benefitted, rather than vexed, the party now purporting to rely on res judicata. Conversely, however, it has been held that a matter should have been raised and decided earlier if it is merely an alternate theory of recovery or an alternate remedy.

*Id*. at 330-31 (footnotes omitted).

 Here, Mr. Dicus initially agreed in January 1986 to use the social security benefits in addition to his direct support obligation. Several months later, Mr. Dicus moved

to reduce his support obligation and have his social security benefits credited toward his obligation. Then, Mr. Dicus ignored the issue for the next 13 years. And, as discussed, the Legislature did not require any offset until 1990.

In 1994, the superior court ordered $500 in child support; that order was replaced in February 1999. Mr. Dicus did not challenge any order or seek offset until February 2000. Mr. Dicus's offset claim could have been decided as early as 1986, certainly no later than 1994. The relevant facts and evidence were available to decide the matter. Even though Mr. Dicus raised the matter in 1986, he abandoned it until February 1999. Even then, he dilatorily waited another year before moving for an offset. In sum, the record indicates no justifiable reason for Mr. Dicus's failure to litigate the social security matter at an appropriate time. Accordingly, the trial court properly ruled res judicata barred Mr. Dicus's 2000 counter motion for an offset.

## C. Laches

██ A person defensively asserting laches must establish (1) the claimant had knowledge of the facts constituting the cause of action or a reasonable opportunity to discover such facts; (2) unreasonable delay on the part of the claimant in commencing the action; and (3) damage to the person asserting laches. *In re Marriage of Barber*, 106 Wn. App. 390, 397, 23 P.3d 1106 (2001); *In re Marriage of Capetillo*, 85 Wn. App. 311, 317, 932 P.2d 691 (1997).

██ ██ The first two elements clearly exist. First, in 1986, Mr. Dicus asserted his subsequently abandoned claim for offset, thus evidencing his knowledge of the facts supporting the claim. *Capetillo*, 85 Wn. App. at 317. Second, Mr. Dicus waited until 2000 to finally litigate the issue. Even disregarding any statute of limitations bar, unusual circumstances can make a delay unreasonable for purposes of laches analysis. *Id.* Here, the record shows an unusual circumstance; Mr. Dicus asserted an offset in 1986 and then remained silent for 13 years. Mr. Dicus presents no facts justifying such an unusually long delay.

Third, although the damage element is less clear, it is satisfied. Ms. Dicus did receive federal benefits on behalf of the children. But, using the offset as an excuse, Mr. Dicus's unpaid direct obligation accumulated. Until Ms. Dicus received a hardship waiver, Ms. Dicus had to personally defend against the federal overpayment claims instigated because of Mr. Dicus's unreported work. At the same time, by counsel, she contended with Mr. Dicus's various offset challenges. Thus, Ms. Dicus expended money she should have received from Mr. Dicus and spent time and money defending and enforcing the child support obligation. *See Capetillo*, 85 Wn. App. at 316 (noting past-due support payments reimburse obligee for funds actually expended). Therefore, Mr. Dicus's unreasonable delay in these contexts damaged Ms. Dicus.

## D. Retroactive Modification

Ms. Dicus contends for the first time on appeal that Mr. Dicus asks for an improper retroactive child support modification. "Generally, child support payments become vested judgments as the installments become due." *Capetillo*, 85 Wn. App. at 316 (citing *Hartman v. Smith*, 100 Wn.2d 766, 768, 674 P.2d 176 (1984); *Schafer v. Schafer*, 95 Wn.2d 78, 80, 621 P.2d 721 (1980)). "The accumulated child support judgments generally may not be retrospectively modified." *Capetillo*, 85 Wn. App. at 316 (citing *Hartman*, 100 Wn.2d at 768; *In re Marriage of Stoltzfus*, 69 Wn. App. 558, 561-62, 849 P.2d 685 (1993)). *See* RCW 26.09.170(1) (providing support modification applies solely to obligations subsequent to modification petition).

While Mr. Dicus seems to Ms. Dicus to be unfairly trying to wipe out his accumulated debt by tardily asserting an offset, it is unnecessary for us to reach the merits here in view of our res judicata and laches holdings. Moreover, her argument is generally precluded because it is made for the first time on appeal. RAP 2.5(a).

Even so, as alternative reasoning, a trial court does have equitable discretion to allow such a modification in

appropriate circumstances. *Capetillo*, 85 Wn. App. at 316-17. Assuming for argument, Mr. Dicus had acted with reasonable diligence, and might be successful in his still pending federal litigation, and that he could have persuaded a trial court to allow him the offset, the equitable principles would seem to apply here.

## ATTORNEY FEES

Ms. Dicus requests attorney fees for enforcing a support order pursuant to RCW 26.18.160. Mr. Dicus did not reply to this issue. The prevailing obligee in an action to enforce a support order is entitled to an award of costs and attorney fees at both the trial and appellate level. RCW 26.18.160; *Capetillo*, 85 Wn. App. at 320. Under these circumstances, Ms. Dicus is entitled to costs and attorney fees after complying with RAP 18.1.

Affirmed.

SWEENEY and KATO, JJ., concur.