IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of<br><br>DEIDRE D. MOATES,<br><br>                Respondent,<br><br>and<br><br>RONALD C. MOATES,<br><br>                Appellant. | No. 80937-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Ronald Moates appeals from the superior court's denial of his motion to revise a commissioner's ruling ordering Ronald to reimburse his former spouse, Deidre Moates, for expenses Deidre advanced for day care, orthodontia, and private school tuition.[1] Ronald contends Deidre failed to provide sufficient proof she paid those expenses. He also contends that Deidre's reimbursement claim was barred by laches and equitable estoppel.

We hold that Deidre, who provided a declaration and invoices showing amounts paid that were corroborated in part with bank statements, put forth sufficient evidence to support the commissioner's finding that Deidre paid the expenses for which the commissioner ordered reimbursement. We hold further that Ronald fails to establish the superior court erred by rejecting his equitable defenses. Therefore, we affirm.

---

[1] Because the parties share a last name, we refer to them by their first names for clarity.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

Ronald and Deidre dissolved their marriage in 2006. They have two children, aged 2 and 13 at the time. Under a final child support order entered in February 2006, Ronald was ordered to pay basic monthly child support of $658 for the parties' older child, a daughter, and $542 for the parties' younger child, a son—for a total monthly transfer payment of $1,200.

In addition to basic child support, the court ordered Ronald to pay "100% of private school tuition for the 2006-2007 school year" and, beginning in fall of 2007, "100% of private school tuition unless otherwise mutually agreed by the parties." Additionally, based on Ronald's proportional share of the parties' income, he was ordered to pay 71.3 percent of extraordinary health care expenses, and the parties "specifically agree[d] that orthodontia expenses are considered a necessary extraordinary health care expense." The 2006 order also provided that when Deidre, who was not working at the time, obtained employment, "she may request reimbursement for the father's proportional share of daycare expenses."

In June 2019, Deidre filed a motion asking the court to hold Ronald in contempt for failing to pay past due basic child support, health care expenses, and day care and education expenses totaling $45,384.80. In an accompanying declaration, Deidre attested that Ronald had been "sporadic-at-best" in making monthly child support transfer payments from 2009 through 2013 and failed to pay support totaling $11,400.00 during that period. Attached to Deidre's declaration was an accounting showing child support payments expected,

received, and still outstanding for 2009 through 2013.[2]

Deidre declared, "Over the years, I have repeatedly reminded [Ronald] of his child support obligation." She attached emails she sent to Ronald in April 2011 and June 2013 in which she provided Ronald with accountings of past due child support transfer payments. She also attached a January 2018 email in which she indicated she "would like . . . to come up with a plan to get caught up with the money that is owed me," and a March 2018 follow-up email to which Ronald responded, "I am not in a position to address your demands at this time." Deidre declared, "It is not lost on me that many years have lapsed before I brought this Contempt Motion." She attested, "The Court should be aware that [Ronald] has been very intimidating towards me in the past," that she did not seek reimbursement earlier because she and Ronald "were raising children together and [she] tried to make their lives as stress-free as possible," and that "considering [her] futile efforts to get [Ronald] to pay in the past, [she] believe[d] this Motion was [her] last recourse."

In addition to past due child support, Deidre also attested that Ronald had failed to pay his proportional share of orthodontia expenses incurred on behalf of the parties' son from 2015 through 2017. Deidre declared, "I have attached a patient ledger from Smart Orthodontic Group which . . . shows that I paid $5,050.00 in orthodontia expenses for our son. . . . To date, I have received no contribution from [Ronald]. His proportional share of this expense is 71.3% or

---

[2] According to Deidre's accounting, Ronald paid child support in full from 2014 through 2018.

$3,604.21." Attached to Deidre's declaration was a Smart Orthodontic Group "Patient Financial Ledger" identifying Deidre as the "Responsible Party" and the parties' son as the patient. According to the ledger, Smart Orthodontic Group charged and was paid a total of $5,050.00 from November 2015 through January 2017.

Deidre also declared that Ronald had not paid his proportional share of day care expenses:

> When I returned to work, I placed our son in daycare at La Petite Academy from 2007 through 2011 and he also attended before-and-after-school care at Rainier Christian Schools from 2011 through 2013. . . . I have attached Forms 2441 and childcare payment summaries that show I paid a total of $20,554.00 in daycare expenses for those years. . . . My ex-husband's 71.3% proportional share of that amount is $14,655.00. [Ronald] has not paid anything towards his proportional share of daycare expenses.

Deidre attached copies of the Department of the Treasury form for reporting "Child and Dependent Care Expenses" for 2007 through 2013. Deidre reported in those forms that she paid child care expenses for the parties' son each year. But only the 2008, 2009, and 2010 forms had supporting documentation attached to them, i.e., a "Child Care Payment Summary" from La Petite Academy showing the child's name, the dates of service, and the amount paid "by Moates, Deidre" for that year. According to these payment summaries, Deidre paid $7,345 to La Petite Academy in 2008, $5,630 in 2009, and $1,099 in 2010.

Next, Deidre claimed that Ronald was delinquent on paying private school tuition for their son. She declared, "I have attached a copy of the paid invoice statement from Rainier Christian Schools which shows that from 2009 through

4

2014, private school tuition for our son totaled $18,829.00." Deidre provided an invoice from Rainier Christian Schools addressed to Deidre and showing the "amount paid" for tuition years 2009 through 2014, totaling $18,829.80. Deidre declared, "[Ronald] has contributed $3,100.00 to the payment of this invoice." Because the 2006 child support order required Ronald to pay 100 percent of private school tuition unless otherwise mutually agreed by the parties, Deidre requested that the court order Ronald to pay the remaining amount, i.e., $15,729.80.

Finally, in addition to a judgment for past due child support transfer payments, orthodontia expenses, day care expenses, and private school tuition, Deidre also requested prejudgment interest and attorney fees.

A commissioner held a show cause hearing on July 24, 2019. The commissioner continued the hearing to August 28, indicating that Ronald "recently retained an attorney and additional time is needed for both parties to supplement financials per [King County Local Family Law Rule] 10."

On August 14, 2019, Deidre filed additional financial documents. These documents included bank statements from 2012 and 2013 showing regular payments to Rainier Christian Schools.[3]

On August 22, 2019, Ronald filed a response to Deidre's contempt motion. He argued that Deidre's claim was barred by laches and equitable estoppel because she unreasonably delayed in requesting repayment. He also argued

---

[3] Specifically, the statements show regular payments to "Rainier Christia Facts."

that Deidre did not provide competent evidence to show she actually paid the orthodontia, day care, and tuition expenses for which she sought reimbursement. Specifically, with regard to the orthodontia expenses, Ronald indicated he did not believe Deidre actually paid the expenses shown on the Smart Orthodontic Group ledger that Deidre filed with her declaration:

> [Deidre] has not provided sufficient proof that she paid the expenses for the orthodontia work.  She provides an invoice that shows some payments are being made but there is no explanation of those payments.  She provides no proof that she is responsible for those payments.  I see there are account numbers for the payments, but they do not match any of the accounts provided by [Deidre].

Similarly, with regard to day care expenses, Ronald argued that the tax documentation Deidre provided "is proof she claimed it on her taxes, but is not proof she paid it."  Ronald asserted, "I remember at the time, I was making payments directly to the provider, La Petite, but I am unable to provide any documentation to prove that because of the timeframe."  Ronald argued that "had [he] owed this money, [Deidre] surely would have requested it from [him] in the last 11 years, which she did not."

Finally, with regard to private school tuition, Ronald argued, "[Deidre] does not provide sufficient proof that she paid the expenses for Rain[i]er Christian School."  He also declared that he "never received a bill, invoice or request to pay the private school until now," and he argued, "Had I owed this money, [Deidre] surely would have requested it from me in the last 10 years, which she did not."  Ronald asked the court to deny Deidre's motion and award Ronald his attorney fees.

6

On August 26, 2019, Deidre filed a reply in support of her contempt motion. With regard to private school tuition, Deidre asserted in her accompanying declaration, "[Ronald] knew the kids were in private school, he approved it, and he knew I expected him to reimburse me." In support of this assertion, Deidre attached an email from October 2011 in which she asked Ronald, "Just checking to see if you are still on track to pay child support and the school payment this week?" She also attached a February 2012 email exchange in which Deidre forwarded a letter from the private school's superintendent and Ronald responded, "I'm thinking attendance might be down. Chapel has been pretty thin on attendance. Are you going to pre-register him?"

Additionally, in response to Ronald's claim that Deidre had not sufficiently proved she actually paid for their son's orthodontia and private school tuition, Deidre pointed to bank statements showing payments to Rainier Christian Schools. She also filed bank statements from December 2015 through December 2016 showing monthly payments to the orthodontia provider in the same amounts shown on the provider's payment ledger Deidre had previously filed.

On August 28, 2019, a commissioner pro tem held a hearing on Deidre's motion. The commissioner found "it [not] credible that the father did not know about private school, orthodontia or day care." The commissioner observed, "Whether he knew the exact dollar amounts, I don't have an answer to that. But . . . based on the record before me and just applying logic to the father's relationship to his children, he had notice of the private school education, . . .

orthodontia and day care expenses being incurred." The commissioner made oral findings that Deidre incurred and paid (1) day care expenses for 2008, 2009, and 2010, i.e., the three years for which Deidre had provided not just a tax form but also an accompanying payment summary from La Petite Academy; (2) the orthodontia expenses shown on the Smart Orthodontic Group payment ledger; and (3) private school tuition of $18,829 (of which Ronald had contributed $3,100). The commissioner ordered Ronald to pay his proportional share of the 2008, 2009, and 2010 day care expenses, his proportional share of the orthodontia expenses, and the outstanding private school tuition. The commissioner also ordered Ronald to pay past due child support transfer payments.

The commissioner declined, however, to hold Ronald in contempt. The commissioner observed that although it was not credible that Ronald did not know about private school, orthodontia, and day care, "he may not have known exactly what the dollars he owed were, and without that specific knowledge, he cannot be found in contempt for non-payment of a specific amount." The commissioner also observed with regard to child support that "for many months [Ronald was] overpaying child support. And the arrears that he owed, it appears that he was making best efforts to catch up. And there were times actually where he paid in full." Thus, although the commissioner ordered Ronald to pay interest on past due transfer payments, the commissioner declined to order prejudgment interest on the day care, tuition, and orthodontia reimbursements. The commissioner also denied both parties' requests for attorney fees. The

8

commissioner ultimately entered an order directing Ronald to pay a total of $9,718.00 in past-due transfer payments (plus interest); $3,600.00 for orthodontia expenses, and $25,722.34 for day care expenses and private school tuition.

On September 6, 2019, Ronald moved to revise the commissioner's order.[4] He argued that the commissioner "didn't properly give credit to [his] argument of laches" and that Deidre did not sufficiently prove the child-related expenses she incurred. The superior court judge denied revision. The judge also denied Ronald's subsequent motion for reconsideration. Ronald appeals.[5]

## ANALYSIS

### Evidence of Payment

Ronald contends that substantial evidence does not support the superior court's findings that Deidre paid the child-related expenses Ronald was ordered to reimburse.[6] We disagree.

"When an appeal is taken from an order denying revision of a court commissioner's decision, we review the superior court's decision, not the

---

[4] Under RCW 2.24.050, "[a]ll of the acts and proceedings of court commissioners . . . shall be subject to revision by the superior court."

[5] Ronald assigns error both to the superior court's order denying revision and to its decision to deny reconsideration of that order. But Ronald does not support the latter assignment of error with argument or citations to legal authority. Accordingly, we do not consider it. See RAP 10.3(a)(6) (requiring appellant's brief to include argument in support of the issues presented for review); see also Riley v. Iron Gate Self Storage, 198 Wn. App. 692, 713, 395 P.3d 1059 (2017) (declining to consider challenge to denial of motion for reconsideration where appellant did not present any distinct argument as to how the trial court abused its discretion by denying reconsideration).

[6] Ronald does not challenge the commissioner's ruling to the extent it ordered him to pay delinquent child support transfer payments.

commissioner's." In re Marriage of Williams, 156 Wn. App. 22, 27, 232 P.3d 573 (2010). The superior court's revision denial constitutes an adoption of the commissioner's decision. Williams, 156 Wn. App. at 27-28. Although the commissioner here made only oral findings that Deidre paid the subject expenses, "[t]he commissioner's oral findings adopted by the revision court are sufficient for review." Williams, 156 Wn. App. at 28. The parties agree our review of these findings is for substantial evidence, i.e., we will uphold the commissioner's findings "so long as they are supported by substantial evidence." In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012); cf. In re Marriage of Rideout, 150 Wn.2d 337, 351, 77 P.3d 1174 (2003) (holding that substantial evidence review was appropriate where trial court weighed competing documentary evidence). "Substantial evidence is that which is sufficient to persuade a fair-minded person of the truth of the matter asserted." Katare, 175 Wn.2d at 35.

Here, Deidre put forth sufficient evidence to persuade a fair-minded person that she paid the expenses the commissioner ordered Ronald to reimburse. With regard to the day care expenses for 2008 through 2010,[7] Deidre declared that she placed her son in day care at La Petite Academy when she returned to work. Deidre provided tax documentation on which she reported payments to La Petite Academy in 2008, 2009, and 2010. She also provided

---

[7] These are the only three years for which the commissioner found Deidre paid day care expenses. Accordingly, and because Deidre does not cross appeal the denial of her reimbursement claim for other years, only these three years are relevant for purposes of our review.

payment summaries from La Petite Academy stating the amount paid for each of those years "by Moates, Deidre." And, Deidre swore under penalty of perjury to the truth of the facts not only in her declaration, but in the attachments thereto.

With regard to the orthodontia expenses, Deidre provided a payment ledger from the orthodontia provider identifying "Mrs. Deidre Moates" as the "Responsible Party" and identifying the parties' child as the patient. The ledger shows payments from November 2015 through January 2017 totaling $5,050. Additionally, with her reply declaration, Deidre provided bank statements to corroborate many of the monthly payments shown in the provider's payment ledger.

Finally, with regard to private school tuition, Deidre provided an invoice from Rainier Christian Schools that was addressed to Deidre and marked "PAID INVOICE." The invoice shows the "amount paid" for five school years, spanning 2009 through 2014, for a total amount paid of $18,829.80. Additionally, Deidre filed bank statements that corroborated the invoice by showing regular payments to Rainier Christian Schools from November 2012 through December 2013.

We hold the evidence described above was sufficient to persuade a fair-minded person that Deidre paid the expenses with respect to which the commissioner ordered reimbursement. Accordingly, the superior court did not err by adopting, via its revision denial, the commissioner's findings to that effect.

Ronald disagrees and relies on In re Marriage of Fairchild, 148 Wn. App. 828, 207 P.3d 449 (2009), for the proposition that the evidence Deidre provided was insufficient to support the commissioner's findings. In Fairchild, the mother,

11

whose expenses were challenged, provided only "a declaration, which included the names of the individuals providing day care for the parties' children and the amount charged . . . ; a statement of health insurance premiums . . . ; and a statement for orthodontic services." 148 Wn. App. at 831. Here, by contrast, Deidre provided invoices showing not just *charged* amounts but *paid* amounts, and she attested to the truth of the facts in the attached invoices. Also, she corroborated the invoices, at least in part, with bank statements showing regular payments. Fairchild is distinguishable.

Ronald next asserts, with regard to the private school tuition, that Deidre told him "the school . . . offered a scholarship and there is no indication if the scholarship paid for the tuition or [Deidre]." But this assertion is unpersuasive because under a substantial evidence review, we ask only whether the evidence was sufficient to persuade a fair-minded person of the truth of the matter asserted; we do not reweigh any conflicting evidence. Dave Johnson Ins. v. Wright, 167 Wn. App. 758, 778, 275 P.3d 339 (2012).

Ronald next argues that "the invoices [Deidre] submitted could have been created by her and there is no verification from the school they were created by the school." But Ronald did not move to strike the invoices below, and he does not provide argument or authority to support his apparent assertion that the commissioner and the superior court abused their discretion by considering the invoices. Accordingly, we do not consider that assertion. See Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) ("We will not consider an inadequately briefed argument."); Holland v. City of Tacoma,

90 Wn. App. 533, 538, 954 P.2d 290 (1998) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.").

<u>Equitable Defenses</u>

Ronald next contends the superior court erred by rejecting Ronald's laches and equitable estoppel defenses to Deidre's claim for expense reimbursement.  We disagree.

Both laches and equitable estoppel are forms of equitable relief.  <u>In re Marriage of Barber</u>, 106 Wn. App. 390, 398, 23 P.3d 1106 (2001).  A defendant asserting laches must prove "(1) the plaintiff had knowledge or a reasonable opportunity to know of the facts constituting a cause of action; (2) commencement of the action was unreasonably delayed; and (3) the defendant was damaged by the delay."  <u>In re Marriage of Capetillo</u>, 85 Wn. App. 311, 317, 932 P.2d 691 (1997).

As for equitable estoppel, the defendant must establish "(1) an admission, statement, or act inconsistent with a claim afterwards asserted; (2) action by another in reasonable reliance on that act, statement, or admission; and (3) injury to the relying party from allowing the first party to contradict or repudiate the prior act, statement, or admission."  <u>Trinity Universal Ins. Co. of Kansas v. Ohio Cas. Ins. Co.</u>, 176 Wn. App. 185, 196, 312 P.3d 976 (2013).  "Equitable estoppel is disfavored, and therefore must be proven by 'clear, cogent and convincing evidence.'"  <u>In re Marriage of Tupper</u>, 15 Wn. App. 2d 796, 812, 478 P.3d 1132 (2020) (quoting <u>Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1</u>, 124 Wn.2d 816, 831, 881 P.2d 986 (1994)).

We review a trial court's denial of equitable defenses for abuse of discretion. In re Marriage of Watkins, 42 Wn. App. 371, 375, 710 P.2d 819 (1985).

The superior court did not abuse its discretion by rejecting Ronald's laches and equitable estoppel defenses. "In light of the Legislature's finding that 'there is an urgent need for vigorous enforcement of child support,' . . . equitable relief from past-due support obligations should be limited to those cases *where enforcement would create a severe hardship on the obligor-parent* and where the facts support traditional equitable remedies." Capetillo, 85 Wn. App. at 319 (emphasis added) (quoting RCW 26.18.010). Furthermore, equitable relief is not warranted where any resulting hardship is created by the obligor-parent's "own failure to pay, to inquire, or to seek modification." Capetillo, 85 Wn. App. at 319.

Here, Ronald points to no evidence that enforcement of the 2006 support order, which expressly required him to pay 100 percent of private school tuition and his proportional share of day care and orthodontia, would cause him severe hardship. Ronald asserts he is harmed because he "is now forced to hire counsel and spend dozens of hours requesting records and combing through boxes in his closet to find thirteen years worth of data." But Ronald would have had to locate records and retain counsel, if he chose to do so, no matter when Deidre made her motion, and a party asserting unreasonable delay "cannot be said to be 'damaged' simply by having to do now what he was legally obligated to do years ago." In re Marriage of Hunter, 52 Wn. App. 265, 271, 758 P.2d 1019 (1988).

14

Ronald also asserts that "[d]uring the past thirteen years, [he] has paid for thousands of dollars of the children's extracurricular expenses, medical costs and daycare costs." Ronald argues that because of the timing of Deidre's motion, "[h]e is precluded from raising such a defense because his bank does not keep records dating back longer than 7 years." But although Ronald cites to his declaration to support the proposition that he paid for "thousands of dollars" of the children's expenses, he did not so declare. In any event, Ronald's argument rests on a flawed premise: That even though the 2006 child support order expressly required Ronald to contribute to day care, orthodontia, and tuition, it was perfectly reasonable for him not to keep records merely because Deidre had yet to request reimbursement.[8] This premise is particularly flawed here, where it is undisputed Deidre requested reimbursement well within the statute of limitations,[9] and there is evidence Ronald was aware his son attended day care, went to private school, and would require orthodontia.[10]

Put another way, the harm and injury Ronald alleges in support of his equitable defenses do not rise to the level of unusual circumstances and are as much a result of Ronald's failure to pay or inquire as they are of any delay on

---

[8] We note that although the day care expenses were incurred more than seven years before Deidre filed her motion, the orthodontia expenses were not.

[9] Deidre asserts that under RCW 4.16.020(3), unpaid support may be collected within 10 years from the date the youngest child in the order turns 18. Ronald does not argue otherwise.

[10] Ronald claimed in his declaration that he recalled making payments directly to the day care provider. Deidre provided an email exchange in which Ronald inquired about whether Deidre would preregister their son for private school. And Ronald declared that he provided his son with dental insurance, which included an orthodontia rider.

Deidre's behalf. See Capetillo, 85 Wn. App. at 317 ("'*Absent unusual circumstances*, the doctrine of laches should not be invoked to bar an action short of the applicable statute of limitation.'" (emphasis added) (quoting Hunter, 52 Wn. App. at 270)). They do not constitute severe hardships, and for the reasons already discussed, they also are insufficient to establish Ronald was damaged by any delay or that any reliance on the passage of time before Deidre sought reimbursement was reasonable. Ronald fails to persuade us that the superior court abused its discretion by rejecting his equitable defenses.[11]

Ronald relies on In re Parentage of Hilborn, 114 Wn. App. 275, 58 P.3d 905 (2002), to argue the superior court erred. Hilborn involved a mother who waited until her daughter was almost 18 to petition for establishment of paternity, despite knowing all along who the father was and where to find him. 114 Wn. App. at 276-77. The mother sought five years' back support, totaling nearly $30,000. Hilborn, 114 Wn. App. at 277. The superior court applied laches to deny back support, reasoning "that it would be inequitable to burden [the father] with a lump sum financial obligation after the time had passed when he could enjoy the blessings of fatherhood." Hilborn, 114 Wn. App. at 277. We agreed, observing that the mother's delay "deprived [the father] of the chance to have a relationship with his daughter, and to have the child bear his name." Hilborn, 114 Wn. App. at 279. We also observed that because the petition was filed shortly before the daughter turned 18, "the court lost the power to grant [the father]

---

[11] This is particularly so given that the court denied Deidre's request for prejudgment interest on reimbursements that had not been previously reduced to specific dollar amounts.

custody or visitation." Hilborn, 114 Wn. App. at 279.

This case is readily distinguishable from Hilborn. Deidre's waiting to seek reimbursement did not deprive Ronald of any opportunity to have a relationship with his son. Quite the contrary: Ronald's relationship with his son was no doubt *enhanced* by the fact that his son's day care, orthodontia, and educational needs were being attended to because Deidre advanced those expenses.[12] Hilborn does not require reversal.

Fees on Appeal

In her response brief, Deidre requests fees on appeal. She cites, among other bases, RCW 26.18.160. That statute provides, in relevant part, "In any action to enforce a support . . . order under this chapter, the prevailing party is entitled to a recovery of costs, including an award of reasonable attorney fees." RCW 26.18.160. The statute is mandatory and applies on appeal, In re Paternity of M.H., 187 Wn.2d 1, 13, 383 P.3d 1031 (2016), and Ronald, who did not file a reply brief, does not argue otherwise. For these reasons, and because Deidre is the prevailing party on appeal, we award Deidre her reasonable attorney fees on appeal subject to her compliance with RAP 18.1.

---

[12] Ronald argued below that Deidre should not be reimbursed for private school tuition because the parties' parenting plan designated education decisions as joint decisions, and he did not agree to his son's attending private school. Ronald does not renew this argument on appeal, and rightly so: Nothing in the 2006 child support order conditions Ronald's tuition payment obligation on his agreement to private schooling. Also, if Ronald objected to his son's attending private school, his remedy was to seek a resolution under the parenting plan, not to withhold payments required by the child support order.

We affirm.

WE CONCUR: