[No. 19134-9-I. Division One. August 22, 1988.]

*In the Matter of the Marriage of* JERI L. HUNTER, *Appellant, and* ROBERT C. HUNTER, JR., *Respondent.*

*Eugene D. Seligmann* and *Seligmann, Dreiling & Beckerman,* for appellant.

*Mark D. Olson* and *Johnson, Hurley, Olson & Olson,* for respondent.

PEKELIS, J.—Jeri L. Hunter appeals from an order vacating and revising a judgment entered in her favor in an action to enforce past due child support.

## I
### FACTS

The marriage of Jeri L. Hunter and Robert C. Hunter, Jr., was dissolved on July 12, 1977. Under the terms of the decree of dissolution, Jeri Hunter was awarded custody of the couple's daughter, Margaret, who was then 4 years old. Robert Hunter was ordered to pay child support in the amount of $240 per month until Margaret reached the age of 18.

Robert Hunter paid child support through April 1979, then stopped. At about that time, he quit his job and took another job as a representative for a clothing manufacturer. For the next year and a half, he had "little [or] no income," and he found that he could not "make it" as a manufacturer's representative. Beginning in mid–1980, his income was entirely from "odd jobs."

In late 1981, Robert Hunter went to Sun Valley to look

for work. About a month later he moved to California, where he had a series of odd jobs. In March 1983 he enrolled in a brokerage training course, and thereafter he began to earn a reliable income. In October 1985 he resumed child support payments.

Between May 1979 and October 1985, the parties had numerous discussions regarding Robert Hunter's child support obligations. Jeri Hunter states that she made repeated requests for support payments, to which Robert Hunter replied that he had no money. Jeri Hunter "backed off" from these requests for a 6–month period in 1980 after Robert Hunter talked to her about taking his own life. At one point in 1979, Jeri Hunter retained an attorney who advised her that, owing to Robert Hunter's lack of income, legal action would not be fruitful.

Robert Hunter concedes that he often discussed his support obligation with Jeri Hunter, and that she repeatedly asked him to make his payments. However, he states that Jeri Hunter agreed to let him reestablish himself financially and recover from alcoholism and delayed stress syndrome. Jeri Hunter denies that she ever excused Robert Hunter's failure to pay support or that she released him from his obligation.

On March 10, 1986, Jeri Hunter initiated proceedings under RCW 26.18.040(1)(a) to enforce Robert Hunter's past due child support. The matter was heard by a Court Commissioner on June 16, 1986, and a judgment was entered for Jeri Hunter in the amount of $30,543.61, representing $20,160 in unpaid support and $10,383.61 in interest.

Robert Hunter moved pursuant to RCW 2.24.050 to revise the Commissioner's ruling. After hearing arguments by counsel for both sides, the trial court concluded that the judgment entered by the Commissioner was "unduly burdensome" and that it should be revised. The court further concluded that a $10,000 judgment would be appropriate, and on August 11, 1986, the judge signed an order to that effect. It is from that order that Jeri Hunter appeals.

## II
### STANDARD OF REVIEW

■ As a general rule, findings of fact which are supported by substantial evidence will not be disturbed on appeal. *See, e.g., Western Nat'l Assur. Co. v. Hecker,* 43 Wn. App. 816, 822, 719 P.2d 954 (1986). However, an exception to this rule is made in cases where the court's findings are not based on oral testimony. *Hecker,* 43 Wn. App. at 823. In such cases, the appellate court stands in the same position as the trial court, and it should independently review the record. *Hecker,* 43 Wn. App. at 823; *see also In re Estate of Nelson,* 85 Wn.2d 602, 605, 537 P.2d 765 (1975); *Carlson v. Bellevue,* 73 Wn.2d 41, 48, 435 P.2d 957 (1968). In this case, since the evidence before both the Commissioner and the trial court consisted entirely of affidavits, this court will conduct an independent review of the record.

## III
### BASIS OF THE TRIAL COURT'S DECISION

■ Delinquent support payments become vested judgments as they fall due. *Hartman v. Smith,* 100 Wn.2d 766, 768, 674 P.2d 176 (1984); *Schafer v. Schafer,* 95 Wn.2d 78, 80, 621 P.2d 721 (1980); *In re Marriage of Watkins,* 42 Wn. App. 371, 374, 710 P.2d 819 (1985), *review denied,* 105 Wn.2d 1010 (1986). The accumulated judgments are generally not subject to retrospective modification. RCW 26.09-.170; *Hartman,* 100 Wn.2d at 768; *Schafer,* 95 Wn.2d at 80; *Watkins,* 42 Wn. App. at 374. On the other hand, equitable principles may be applied to mitigate the harshness of some claims for past due child support when their application does not work an injustice to the custodial parent or to the child. *Hartman,* 100 Wn.2d at 768–69 (equitable estoppel); *see also Schafer,* 95 Wn.2d at 81–82 (equitable credit); *Watkins,* 42 Wn. App. at 374 (laches).

We are mindful of language in *Watkins* which states that

> the trial court . . . is authorized to consider and determine to what extent the parties should perform the duties imposed upon them by the decree of dissolution. After a hearing, the trial court may enter such an order as the court, in the exercise of its discretion, deems appropriate.

(Citation omitted.) *Watkins,* 42 Wn. App. at 373. However, we think that this characterization of the trial court's discretion is unduly broad. We note, first, that the cases cited in support of it antedate RCW 26.09.170, which provides that child support obligations may be modified "only as to installments accruing subsequent to the motion for modification". In light of this policy, we think that the trial court's power to, in effect, retrospectively modify a duty of support in an enforcement proceeding must be restrained within the framework of established "equitable principles." *Hartman,* 100 Wn.2d at 769.

In this case, although the arguments before the trial court focused mainly on the issues of laches and equitable estoppel, the court did not base its decision on these or any other "equitable principles." Rather, the court simply concluded that the judgment entered by the Commissioner was "unduly burdensome" and "an injustice" because the court could not foresee "when, on the amount of money [Robert Hunter was making], it would ever be paid."

The trial court's action was, in effect, a retrospective modification of Robert Hunter's support obligation. We hold that a trial court does not have unfettered discretion to relieve the payor from past due support payment. Rather, it must identify an equitable principle that justifies departure from the general rule that support obligations will not be modified retrospectively. Here, the trial court's stated reasons do not justify departure from the general rule. However, it remains to be determined whether the court's ruling may be sustained by application of either of the two equitable principles argued below. *See In re Marriage of Oliver,* 43 Wn. App. 423, 426, 717 P.2d 316 (1986).

## IV
## LACHES

 Robert Hunter contends that the equitable principle of laches is appropriate in this case. The defendant who asserts laches has the burden of proving that:

(1) the plaintiff had knowledge of the facts constituting a cause of action or a reasonable opportunity to discover such facts; (2) there was an unreasonable delay in commencing the action; and (3) there is damage to the defendant resulting from the delay.

*Watkins*, 42 Wn. App. at 374.[1] Absent unusual circumstances, the doctrine of laches should not be invoked to bar an action short of the applicable statute of limitation. *Brost v. L.A.N.D., Inc.*, 37 Wn. App. 372, 375, 680 P.2d 453 (1984). Moreover, the delay required can only be considered unreasonable if it occurs "under circumstances permitting diligence". *Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc.*, 96 Wn.2d 939, 949, 640 P.2d 1051 (1982). Finally, more than an unreasonable delay is required: there must also be an intervening change of position on the part of the defendant, making it inequitable to enforce the claim. *Arnold v. Melani*, 75 Wn.2d 143, 147–48, 437 P.2d 908, 449 P.2d 800, 450 P.2d 815 (1968); *see also Brost*, 37 Wn. App. at 375–76.

In this case, it is undisputed that Jeri Hunter had knowledge of the facts constituting a cause of action. She delayed bringing that action until March 1986, almost 7 years after Robert Hunter's first delinquent support payment. The applicable statute of limitation is 10 years, RCW 6.17.020, so the action should not be barred by laches absent "unusual circumstances," *Brost*, 37 Wn. App. at 375.

---

[1]While we agree with *Watkins* that the defense of laches may be raised in a proceeding to enforce past due child support, we do not agree that the third element, damage, was established in that case. We believe that merely showing that the noncustodial parent did not seek visitation rights and incurred financial obligations is insufficient in itself to demonstrate the type of damage required by the doctrine of laches. *See Watkins*, 42 Wn. App. at 375.

Robert Hunter admits that he was unable to pay child support because of his lack of income. For the same reason, Jeri Hunter's attorney advised her that it would not be fruitful to take legal action. Under these circumstances, we do not consider Jeri Hunter's delay to have been unreasonable.

Furthermore, Robert Hunter has not shown any damage resulting from Jeri Hunter's delay. He cannot be said to be "damaged" simply by having to do now what he was legally obligated to do years ago.[2] Rather, he must demonstrate some change of position which would make it inequitable to allow Jeri Hunter to enforce her claim. *See Arnold*, 75 Wn.2d at 147–48. This he has not done. Thus, the trial court's decision cannot be upheld by application of the principle of laches.

## V
### EQUITABLE ESTOPPEL

■ Robert Hunter also contends that equitable estoppel should operate to bar Jeri Hunter's claim for past due support. The doctrine of equitable estoppel is applicable when a person, by her acts or representations, causes another to change his position to his detriment. In such a case, the person who performs such acts or makes such representations will be precluded from asserting to her own advantage the conduct or forbearance of the other party. *Hartman,* 100 Wn.2d at 769 (quoting *Dickson v. United States Fid. & Guar. Co.,* 77 Wn.2d 785, 788, 466 P.2d 515 (1970)). The party who asserts equitable estoppel must establish:

(1) an admission, statement, or act inconsistent with the claim afterward asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury resulting from allowing the first party to contradict or repudiate [such admission, statement, or act].

---

[2] In his reply affidavit, Robert Hunter states: "Damages from the delay in bringing this suit is [*sic*] that I will be unable to pay the judgment, plus interest, and payments even over a reasonable period of time will be unduly burdensome."

*Roy v. Cunningham,* 46 Wn. App. 409, 415, 731 P.2d 526 (1986), *review denied,* 108 Wn.2d 1018 (1987).

In *Hartman,* the mother was awarded custody of the child, and the father was ordered to pay child support. Later, the mother remarried, and her new husband sought to adopt the child. The father consented on the condition that he retain reasonable visitation rights, and an order of adoption was entered providing for such rights. The mother informed the father that the adoption relieved him of his duty of support. Some 7 years later, after a series of disputes over visitation, the adoption order was vacated. The father then resumed support payments, and the mother made a claim for the past due support which had accrued during the 7-year period of presumed adoption. *Hartman,* 100 Wn.2d at 766-67.

The trial court entered judgment for the mother, and the Supreme Court reversed, finding that the mother's claim was barred by equitable estoppel. *Hartman,* 100 Wn.2d at 767-70. The court pointed out, first, that the mother had asked the father to consent to the adoption, and had represented to him that he no longer had a duty of support. Furthermore, the father had relied to his detriment on the mother's representations by relinquishing his parental rights. Under these circumstances, the court held, the mother should not be permitted to benefit from the father's loss. *Hartman,* 100 Wn.2d at 769-70.

In this case, Robert Hunter has failed to establish an "admission, statement, or act" inconsistent with Jeri Hunter's claim for child support. *Roy,* 46 Wn. App. at 415. He states that Jeri Hunter "agreed to let [him] re-establish [him]self and recover from the alcoholism [and] the delayed stress syndrome," but he concedes that she continued to request support payments. Jeri Hunter denies that she ever released Robert Hunter from his support obligation, and she also states that she continued to request payments. Furthermore, as discussed above in connection with

the issue of laches, Robert Hunter has failed to demonstrate any "injury" other than having to do now what he was legally obligated to do years ago.

We conclude, then, that neither laches nor equitable estoppel is applicable on the facts of this case. Because we discern no other equitable principles which would operate to retrospectively modify Robert Hunter's support obligation, the trial court's revision order must be reversed.[3] *See Oliver,* 43 Wn. App. at 426.

## VI
### ATTORNEY FEES

Pursuant to RAP 18.1, Jeri Hunter has requested attorney fees on appeal. RAP 18.1(a) provides:

> If applicable law grants to a party the right to recover reasonable attorney fees or expenses on review, the party should request the fees or expenses as provided in this rule.

The "applicable law" in this case is RCW 26.18.160,[4] which provides in part:

> In any action to enforce a support order under this chapter, the prevailing party is entitled to a recovery of costs, including an award for reasonable attorney fees.

This court has held that RCW 26.18.160 applies to attorney fees on appeal. *Effert v. Kalup,* 45 Wn. App. 12, 18, 723

---

[3]We note, moreover, that the application of laches or equitable estoppel would be inconsistent with the $10,000 judgment entered by the trial court, since either doctrine would operate to *bar* Jeri Hunter's claim. *See Hartman v. Smith,* 100 Wn.2d 766, 769, 674 P.2d 176 (1984) (equitable estoppel operates to bar respondent's claim for past due child support); *In re Marriage of Watkins,* 42 Wn. App. 371, 373–75, 710 P.2d 819 (1985) (action for past due child support barred by laches), *review denied,* 105 Wn.2d 1010 (1986).

[4]Jeri Hunter suggests that RCW 26.09.140 is also an appropriate basis on which to make a request for attorney fees in this case. However, RCW 26.09.140 applies only to "proceeding[s] under this chapter;" *i.e.,* RCW 26.09. This appeal arises out of a proceeding under RCW 26.18, not RCW 26.09.

P.2d 541 (1986). We find that Jeri Hunter is entitled to an award of attorney fees in the amount of $3,500.[5]
Reversed.

SCHOLFIELD, C.J., and WINSOR, J., concur.

Reconsideration denied October 12, 1988.

Review denied by Supreme Court February 28, 1989.

---

[5]Jeri Hunter has moved to supplement the record with the parties' 1986 income tax returns in order to establish their relative needs and abilities to pay attorney fees. However, unlike RCW 26.09.140, RCW 26.18.160 does not require that an award of attorney fees be based upon a showing of one party's need or the other's ability to pay. *Compare In re Marriage of Ochsner*, 47 Wn. App. 520, 529, 736 P.2d 292, *review denied*, 108 Wn.2d 1027 (1987) (RCW 26.09.140) *with In re Marriage of Anderson*, 49 Wn. App. 867, 873, 746 P.2d 1220 (1987) (RCW 26.18-.160) *and In re Marriage of Correia*, 47 Wn. App. 421, 426, 735 P.2d 691 (1987) (RCW 26.18.160). Consequently, there is no need for the additional information offered by Jeri Hunter, and her motion is denied.