IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Marriage of | ) | No. 32778-7-III |
| | ) | |
| CYNTHIA SANCHEZ, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| STEVEN SANCHEZ, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Steven Sanchez appeals the trial court's failure to apply

equitable principles to reduce the harshness of back-owed child support. We construe the

trial court's ruling as a determination that it lacked authority to apply equitable principles

to reduce back-owed child support. Because this determination is an error of law, and the

error is not harmless under these facts, we reverse the trial court and remand for a new

hearing.

FACTS AND PROCEDURE

Cynthia Sanchez and Steven Sanchez divorced through an uncontested dissolution

of marriage proceeding. In February 2002, the unrepresented parties entered a child

support order that Mr. Sanchez would pay $609 total for two children in child support to Ms. Sanchez directly each month. The order indicated that Mr. Sanchez (the obligor) has a monthly income of $1,817 and Ms. Sanchez (the obligee) has a monthly income of $263. The order also permitted each party to claim one of the two children as dependents each year for tax purposes. Although the order allowed for periodic adjustments every other year subject to income changes, neither of the parties ever sought judicial modification of the original order.

Soon after entry of the order, Mr. Sanchez began paying Ms. Sanchez $400 per month. According to Mr. Sanchez, the monthly support obligation was reduced by agreement after the parties determined that Ms. Sanchez's monthly income was greater than the $263 she represented. Mr. Sanchez had paid $400 per month during the pendency of the divorce proceeding. And, rather than going to court to modify the child support order, the parties informally agreed that the monthly support obligation would be reduced to $400. According to Ms. Sanchez, however, Mr. Sanchez "badgered me from the time we got divorced into believing that he was broke and could not afford to pay the $609 in support" and "I never agreed that he would be relieved of his obligation to make up the back support." Clerk's Papers (CP) at 91. In addition, the parties further informally modified the child support order by allowing Ms. Sanchez to claim both children as deductions every year except one for child support purposes.

2

The record contains multiple letters from Ms. Sanchez to Mr. Sanchez. In October 2004, Ms. Sanchez sent Mr. Sanchez a letter that addressed financial matters relating to the divorce. In the letter, Ms. Sanchez stated, "I let you pay $400/mo child support when the court order is about $625." CP at 45. She then referenced a joint tax debt, and gave Mr. Sanchez the following options: (1) "[You] take care of that tax debt so I can get on with my life," or (2) "[I'll] revisit child support and go back to support enforcement to get the back child support." CP at 45. Mr. Sanchez paid the tax debt and continued to pay $400 per month in child support.

In April 2007, Ms. Sanchez requested that Mr. Sanchez pay more, and he began paying $500 per month in child support. In a September 2010 letter, Ms. Sanchez proposed that he refinance his home loan and pay a $40,000 lump sum for back child support. According to Ms. Sanchez in that letter, "if we went to court, they'd make you pay all the back support *even though we've agreed for you to pay less.*" CP at 108 (emphasis added). In April 2014, Ms. Sanchez again threatened to collect back support regardless of her agreement with Mr. Sanchez.

In May 2014, Mr. Sanchez filed a motion seeking judicial determination that he did not owe any back child support. Mr. Sanchez claimed he would have earlier filed a motion to modify the 2002 child support decree and to reduce support payments if the parties had not earlier reached an agreement to reduce the amount. In response to Mr.

3

Sanchez's motion, Ms. Sanchez moved for a judgment on the back child support. Ms. Sanchez's motion indicated that by this time Mr. Sanchez was $22,119 behind on child support payments. The court commissioner issued an order that estopped Ms. Sanchez from claiming back child support and modified the child support to $500 per month. Ms. Sanchez moved for revision of the commissioner's ruling.

In August 2014, the trial court granted Ms. Sanchez's motion for revision. In granting revision, the trial court ruled that because child support is for the benefit of the children, that neither the parties nor the court could modify or grant equitable relief even if the parties informally agreed to reduce child support. Specifically, the trial court stated:

> Number one. . . . This child support order . . . was never modified. $609 a month. Now he says he discovered soon thereafter that was wrong, and they figured this out themselves, and it should have been less. . . . But another basic tenet of child support is it is absolutely not the obligee parent's right to give up or compromise child support. She had no right. She had no right to tell him you can pay less. . . . [I]f there was a bad here, they both participated in this. . . . It was not her right to relinquish. So that's number two.
> Number three, there is the well established rule that periodic adjustments are not self-executing. . . . You don't just agree to them and do them. You have to do the modified order, have the court approve it.
> Number four, I think he owes the difference between what the order said and what he paid . . . . However, he gets credit for what he paid, and that's different than the compromising amount. . . . So do that math.

4

Subtract [the items[1] he paid beyond his support obligation] from his past due obligation.

CP at 147-49.

The court commissioner and the trial court based their respective decisions on affidavits rather than live testimony. Mr. Sanchez appeals.

## ANALYSIS

This appeal presents a conflict between two Washington policies: (1) judicial oversight over setting support obligations to protect unrepresented children, and (2) amelioration of the harshness of a judgment for back child support when the support obligor detrimentally relied on actions or promises of the obligee. Ms. Sanchez seeks to enforce the 2002 judgment requiring payment of $609 per month and to gain entry of a judgment for the difference between the ordered amount and the amount actually paid by Mr. Sanchez since 2002. Mr. Sanchez has consistently argued to the court commissioner, the trial court, and this court that the doctrines of laches and equitable estoppel should be applied to reduce the harshness of his back-owed child support obligation.

"A custodial parent has no personal interest in the support funds collected and expended on behalf of his or her child, but rather acts as trustee for the child's benefit."

---

[1] In its ruling, the trial court specified the items for which Mr. Sanchez was to receive credit. The trial court overlooked the substantial tax benefits Ms. Sanchez received by claiming both children, rather than only one, as deductions on her tax returns.

5

*Hartman v. Smith*, 100 Wn.2d 766, 768, 674 P.2d 176 (1984) (citing *Ditmar v. Ditmar*, 48 Wn.2d 373, 374, 293 P.2d 759 (1956)). "'A child's custodian receives support money as a trustee and not in his or her own right.'" *In re Marriage of Watkins*, 42 Wn. App. 371, 373, 710 P.2d 819 (1985) (quoting *Fuqua v. Fuqua*, 88 Wn.2d 100, 105, 558 P.2d 801 (1977)). "For this reason, we have held agreements between parents regarding modification of *prospective* support invalid as against public policy." *Hartman*, 100 Wn.2d at 768 (alteration in original) (citing *Ditmar*, 48 Wn.2d at 374); *see Watkins*, 42 Wn. App. at 373-74. Although Mr. Sanchez testified to an agreement to reduce the level of child support, he correctly does not seek to enforce any agreement.

Generally, child support payments become vested judgments as the installments become due. *Hartman*, 100 Wn.2d at 768. Money paid to the residential parent for past-due support serves to reimburse the residential parent for monies actually expended. *Id.* The accumulated child support payments may not be retrospectively modified. *Id.* RCW 26.09.170(1)(a) provides, in part, that:

> the provisions of any decree respecting . . . support may be modified . . . [o]nly as to installments accruing subsequent to the petition for modification or motion for adjustment . . . .

Despite RCW 26.09.170(1)(a), Washington courts will apply traditional equitable principles to mitigate the harshness of claims for back child support if it will not work an injustice to the residential parent or the children. *In re Marriage of Shoemaker*, 128

6

Wn.2d 116, 122-23, 904 P.2d 1150 (1995) (quoting *Hartman*, 100 Wn.2d at 769); *see In re Marriage of Hunter*, 52 Wn. App. 265, 270, 758 P.2d 1019 (1988); *Watkins*, 42 Wn. App. at 374. The reason why back child support payments can be equitably reduced is because the children, who are the beneficiaries of the support order, have already been supported by the obligee parent; so collection of the debt is reimbursement for the obligee parent, and any obligee can by words or actions forfeit the right of reimbursement.

When seeking to avoid past-due child support, the obligor typically relies on the twin doctrines of laches and equitable estoppel. Although Mr. Sanchez mentions laches in his appeal brief, he only provides argument based on equitable estoppel. This court does not review issues not argued, briefed, or supported with citation to authority. RAP 10.3(a)(6); *Valente v. Bailey*, 74 Wn.2d 857, 858, 447 P.2d 589 (1968); *Avellaneda v. State*, 167 Wn. App. 474, 485 n.5, 273 P.3d 477 (2012) (quoting *Escude v. King County Pub. Hosp. Dist. No. 2*, 117 Wn. App. 183, 190 n.4, 69 P.3d 895 (2003)). Therefore, we address only equitable estoppel. Mr. Sanchez argues that the trial court erred because it failed to analyze his arguments of equitable estoppel. We agree.

A party who asserts equitable estoppel must prove that: (1) the opposing party asserted a statement or acted inconsistent with a claim afterward asserted, (2) the party acted on the faith of that statement or act, and (3) the party would be injured if the opposing party was allowed to contradict or repudiate the statement or act. *Hunter*, 52

Wn. App. at 271 (quoting *Roy v. Cunningham*, 46 Wn. App. 409, 415, 731 P.2d 526 (1986)). A shorter version of equitable estoppel is a person by her acts or representations causes another to change his position to his detriment. *Id.* "Equitable estoppel is not favored, and the party who asserts it must prove every element with clear, cogent, and convincing evidence." *In re Marriage of Sanborn*, 55 Wn. App. 124, 129, 777 P.2d 4 (1989). Decisions are very fact specific.

Mr. Sanchez presents evidence from which a trial court could apply equitable estoppel. He offers testimony that shows inconsistent statements or actions by Ms. Sanchez and his reliance on the conduct to his detriment. Mr. Sanchez asserts that the parties discovered that Ms. Sanchez's reported income in her child support worksheet was understated and the parties agreed to reduce the monthly obligation. Ms. Sanchez's October 2004 letter implies a promise not to collect back-owed support if Mr. Sanchez paid a mutual tax obligation, and Mr. Sanchez paid this obligation. Mr. Sanchez gave up his right to claim one of his children as a tax deduction each year with one exception. He forewent the opportunity to apply to the court for a reduction in the child support obligation. Concerning the standard of proof, we have at least two documents sent by Ms. Sanchez that verifies some sort of an agreement, arguably consistent with an agreement to not *assert* back-owed support, not merely to *delay* assertion of that right, as more recently argued by Ms. Sanchez. "On review, we ask whether the findings are

supported by substantial evidence and whether the trial court has made an error of law."
*In re Marriage of Capetillo*, 85 Wn. App. 311, 316, 932 P.2d 691 (1997). The trial court here did not enter findings of fact and conclusions of law, beyond stating that its oral ruling represented its findings. The trial court gave a credit to Mr. Sanchez for some payments made other than child support, but did not base the credit on equitable estoppel or laches. The trial court never mentioned equity, equitable estoppel, or laches in its oral ruling; nor did it explain why it was denying equitable relief despite Mr. Sanchez and Ms. Sanchez extensively briefing and arguing the equitable issues. Instead, the trial court underscored that Ms. Sanchez could not relinquish her children's right to child support. For these reasons, we construe the trial court's oral ruling as concluding it lacked authority to provide equitable relief. Because trial courts have authority to apply equitable principles to reduce the harshness of back-owed support, the trial court's legal conclusion to the contrary is error.

On at least one occasion, this court has weighed the evidence as to equitable estoppel anew when the trial court issued a ruling based only on affidavits rather than live testimony. *Hunter*, 52 Wn. App. at 268. We decline to do so here. We believe the parties are best served by the trial court first evaluating the evidence in light of the correct legal principles.

9

No. 32778-7-III
*In re Marriage of Sanchez*

We reiterate that application of equitable principles is within the trial court's discretion. The panoply of remedies is broad: reasonable relief under these facts might be limited to an offset, it might additionally include a waiver of interest, or it might take the form of complete relief as sought by Mr. Sanchez. Such relief could be anywhere in between. Our reversal of the trial court is not based on the inadequacy of equitable relief. Rather, it is based on our interpretation of the trial court's comments that it lacked authority to provide equitable relief in this case. This was error, and the error was not harmless.

Reversed and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, J.

10

32778-7-III

Korsmo, J. (dissenting) — "He cannot be said to be 'damaged' simply by having to do now what he was legally obligated to do years ago."[1]

The veteran trial court judge, who had been hearing these types of motions for two decades, knew exactly what she was doing when she partially turned down Steven Sanchez's request for equitable relief. She did not express any confusion concerning her authority to grant him equitable relief. She simply decided he was not entitled to any additional relief beyond what she was granting. For the same policy reasons stated by the trial judge, we should affirm that judgment.

Although the majority nicely summarizes the trial court's ruling on equitable relief, rolling three pages of the transcript into a concise statement, it misses the context of the judge's ruling. Clerk's Papers (CP) at 147-149. The trial judge was explaining why the parties could not modify child support between themselves; she was not addressing her authority to act equitably in this circumstance. CP at 147. Moreover, she did give Mr. Sanchez most of the equitable relief he was requesting—credit against his back due support obligations for other voluntary payments he did make, including a tax debt that the court concluded Mr. Sanchez had paid for Ms. Sanchez. The trial court

---

[1] *In re Marriage of Hunter*, 52 Wn. App. 265, 271, 758 P.2d 1019 (1988).

could not have granted even that relief if it believed it lacked authority to do so. That fact alone demonstrates the error in the majority's reading of the record.

The court did not need to discuss each and every claim Mr. Sanchez threw into the air. It denied his substantive claim that the parties had modified the support obligation. They could not do so for all of the reasons stated by the trial judge. It is contrary to the public policy of this state for parties to unilaterally alter a trial judge's order. *E.g., State v. Sanchez*, 166 Wn. App. 304, 271 P.3d 264 (2012) (protected party not allowed to waive judicially imposed no-contact order). Permitting such practices, even indirectly, encourages one side to bully the other and simply keeps the dissolution process alive by permitting the parties to keep fighting over support between themselves. The trial court's rejection of this argument mooted most of the rest of Mr. Sanchez's remaining complaints. The trial judge had no reason to discuss them.

Nothing in this record suggests that the trial court did not understand its authority to grant Mr. Sanchez some equitable relief. Indeed, it did grant him substantial equitable relief. The judge simply did not accept his claim that the parties could modify judicial orders by their own agreement. There is no injustice in requiring someone to pay what he owes, and there certainly is no entitlement to equitable relief from that obligation. The judgment should be affirmed.

Korsmo, J.

2