# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 77802-1-I |
| | ) | |
| MARIE SMITH, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| and | ) | |
| | ) | |
| DUANE SMITH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: September 9, 2019 |
| | ) | |

MANN, A.C.J. — Duane Smith appeals a trial court judgment for back spousal support, interest, and attorney fees. Duane[1] argues that the trial court erred when it did not find the existence of an oral agreement to modify his spousal support obligation, and denied his equitable defenses of estoppel and laches. We affirm.

I.

Marie and Duane Smith married in December 14, 1978. In 2008, Marie filed a petition for dissolution. At the time, Duane was living in Singapore, working for Boeing. Duane accepted service of the petition and consented to personal jurisdiction. Duane

---

[1] We use the parties' first names in order to avoid confusion. No disrespect is intended.

did not object to any terms of the petition for dissolution, hire a lawyer, or appear formally at the proceedings.

The trial court dissolved the Smith's marriage on March 10, 2009. The court awarded Marie the family home, encumbered by a mortgage and home equity line of credit, a timeshare, a 2001 Mercedes, 60 percent of the Boeing pension, all bank and investment accounts, Duane's 401(k), and all personal property in Seattle. The trial court awarded Duane a debt-free vacation property on Henry Island, a 1968 Corvette Stringray, a timeshare, a boat, 40 percent of the Boeing pension, and personal property in Singapore. The trial court ordered the entire balance of the mortgage, home equity line of credit, and obligations associated with the timeshare be paid by Marie. The trial court ordered the entire balance of 15 credit cards be paid by Duane, except for any amount incurred by Marie after separation, the Henry Island property taxes, and obligations associated with the timeshare. The court ordered Duane to pay 40 percent of his gross income as maintenance for seven years, which was $10,000 per month. At the time, Duane's taxable income was about $300,000 a year.

Duane asserts that his gross income was never close to $300,000. He explains while his 2009 tax return shows that he earned $296,425—after Boeing adjustments were subtracted—his gross salary was actually $155,149. Duane contends that after taxes his net monthly income was $10,084.75 per month in 2009. Marie responds that Duane's net income does not include "deductions for employer-financed luxury housing, transportation (car allowance), utilities, insurance (life, health, disability), health care (FSA), his voluntary 401(k) contribution, his increasing pension benefits, payment of taxes, and even preparation of his tax return."

Central to this appeal is an alleged oral agreement between Duane and Marie purporting to modify the spousal support obligations. Duane alleges he was unable to pay the $10,000 spousal support to Marie, and they agreed that Duane would only be obligated to pay $5,000 in spousal support each month. Duane claims he deposited his paycheck into their joint account and Marie would withdraw $2,500 each pay period.[2] Even though Duane was paying Marie less money, he contends that under their agreement, his obligation to make payments would still cease after seven years.

Marie responds that there was no oral agreement to modify the spousal support obligation. Marie took the $2,500 each pay period from their joint bank account because that was the amount that Duane instructed her to withdraw. Marie took the money under the belief that Duane would continue paying her past the seven-year requirement until he paid the total award under the decree. Marie contends she was afraid Duane would "cut [her] off unless [she] agreed to his terms."

Duane claims that Marie admitted that there was an oral agreement, citing an e-mail that he sent to Marie where he states "we agreed to split my paycheck which was never 10K a month." But in the same e-mail chain Marie responded:

> I remember agreeing to a lesser payment since your paycheck was not accommodating what the court had ordered. This however did not void the total amount due. Paying the lower amount would increase the amount of time it would take to pay off total due. Let's come to an agreement between us. Before it's out of our hands.

Marie filed a motion to enforce the spousal support obligation, which was granted, but then vacated when Duane filed a CR 60 motion to vacate on procedural grounds. Marie brought her motion to enforce again. Duane argued that equitable

---

[2] Boeing paid Duane every two weeks.

3

defenses of estoppel and laches barred Marie's enforcement of the dissolution decree. The superior court commissioner entered a judgment for $750,971.43, with $429,733.08 in back spousal support, $301,238.35 in interest, and $20,000 in attorney fees. The commissioner also entered two Qualified Domestic Relations Orders (QDRO's), for the remainder of Duane's 401(k) and remaining and future pension benefits. The trial court denied Duane's motion to revise the commissioner's ruling. Duane appeals.

## II.

Duane first argues that the trial court erred in entering its judgment for back support and interest because the parties entered into and performed an oral agreement modifying the husband's spousal support maintenance obligation. We disagree.

## A.

The existence of an oral agreement is a question of fact. Duckworth v. Langland, 95 Wn. App. 1, 7, 988 P.2d 967 (1998). Findings of fact are reviewed for substantial evidence. In re Marriage of Hunter, 52 Wn. App. 265, 268, 758 P.2d 1019 (1988). An exception to this rule exists where the court's findings are not based on oral testimony. Hunter, 52 Wn. App. at 268. When the trial court's findings of fact are based entirely on affidavits, the court will conduct an independent review of the record. Hunter, 52 Wn. App. at 268. Here, the trial court reviewed affidavits and supporting exhibits. On appeal, we will conduct an independent review of the record.

To show the existence of an oral agreement, there must be mutual intention or "meeting of the minds" on the essential terms of the agreement. McEachern v. Sherwood & Roberts, Inc., 36 Wn. App. 576, 579, 675 P.2d 1266 (1984). "The burden of proving a contract, whether express or implied, is on the party asserting it, and he

must prove each essential fact, including the existence of a mutual intention." Saluteen-Maschersky v. Countrywide Funding Corp., 105 Wn. App. 846, 851, 22 P.3d 804 (2001). The courts have enforced oral separate property agreements when supported by clear and convincing evidence showing both the existence of the agreement and mutual observance of the agreement. DewBerry v. George, 115 Wn. App. 351, 359, 62 P.3d 525 (2003). Since this oral agreement purports to modify property rights defined in the dissolution decree, Duane must demonstrate the existence of the agreement and mutual observance of the agreement by clear and convincing evidence. See also Poston v. Western Dairy Products Co., 179 Wash. 73, 84, 36 P.2d 65 (1934) (holding oral modification of a written contract must be shown by clear and convincing evidence).

### B.

Duane relies on DewBerry in support of his argument that he presented sufficient evidence establishing an oral agreement to modify his spousal obligation. In DewBerry, this court affirmed the trial court's finding that there was an oral separate property agreement prior to the parties' marriage and was supported by substantial "highly probable" evidence. DewBerry, 115 Wn. App. at 362. Several witnesses testified that the parties created an oral prenuptial agreement and that the couple acted in accordance with the agreement. DewBerry, 115 Wn. App. at 362. The parties took steps to avoid commingling their assets, which was strong evidence of a separate property agreement. DewBerry, 115 Wn. App. at 362. Both parties "meticulously accounted for and handled their individual incomes as separate property and created minimal joint accounts to handle certain family-related expenses and requirements."

DewBerry, 115 Wn. App. at 362. This evidence, the court concluded, made it highly probable that there was an oral agreement. DewBerry, 115 Wn. App. at 362.

This case is not like DewBerry. Here, Duane relies on self-serving e-mails where he mentions discussions about the agreement. These e-mails, however, post-date from when Duane alleges the agreement was formed, and therefore do not evidence a mutual intention. Further, in January 2016, Marie e-mailed Duane stating:

> I'm hoping that we will be able to work this out between the two of us. As dealing with the lawyer and court is costly and a headache. The court order was for you to pay me $10,000 per month for 84 months equaling 840,000 dollars. Over the last 96 months you have paid approximately $480,000. There is an additional $360,000 owing. I am willing to work with you outside of court.

Duane responded, "I'm not sure why you think I even make 10K a month—you have seen the deposit to account for the last 8 years and if you add up the deposit net pay I never made 10K a month . . . You also told me that you and the court agree to 7K and I told you I would split my paycheck with you." Marie responded:

> I remember agreeing to a lesser payment since your paycheck was not accommodating what the court had ordered. This however did not void the total amount due. Paying the lower amount would increase the amount of time it would take to pay off total due. Let's come to an agreement between us. Before it's out of our hands.

The evidence does not support a mutual intention to modify the spousal support obligation by clear and convincing evidence. DewBerry, 115 Wn. App. at 359. The trial court did not err when it found Duane failed to prove the existence of an oral agreement to modify the spousal support obligation.

III.

In the alternative, Duane contends that even if the parties had not entered into an oral agreement, the trial court erred in entering the judgment when Duane's detrimental

reliance on Marie's conduct estopped Marie from enforcing the maintenance obligation. We disagree.

As a general rule, "[d]elinquent support payments become vested judgments as they fall due." Hunter, 52 Wn. App. at 268. Accumulated judgments are generally not subject to retrospective modification. Hunter, 52 Wn. App. at 268. Equitable principles, however, may be applied to mitigate the harshness of some claims for past due marital support when their application does not work an injustice on the supporting spouse. In re Marriage of Sanborn, 55 Wn. App. 124, 127, 77 P.2d 4 (1989). We review a trial court's denial of equitable defenses for abuse of discretion. In re Marriage of Watkins, 42 Wn. App. 371, 375, 710 P.2d 819 (1985).

A.

Duane first asserts that Marie should have been equitably estopped from enforcing the maintenance obligation. The party asserting equitable estoppel must establish: "(1) an admission, statement, or act inconsistent with the claim afterward asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury resulting from allowing the first party to contradict or repudiate [such admission, statement, or act.]" Hunter, 52 Wn. App. at 271. "The doctrine of equitable estoppel is applicable when a person, by her acts or representations, causes another to change his position to his detriment." Hunter, 52 Wn. App. at 271. Providing relief through equitable estoppel is not favored, "and the party who asserts it must prove every element with clear, cogent, and convincing evidence." Sanborn, 55 Wn. App. at 129.

Duane contends that it is indisputable that Marie's actions of "withdrawing only half [Duane's] paycheck from their joint account" was an act inconsistent with her claim that they never modified Duane's spousal support obligation. Duane argues he relied on their oral agreement, he was injured because he now owes back maintenance and interest, and he would have filed a motion to vacate the default decree under CR 60, but for Marie's assurances.

Marie responds that Duane "cherry-picked snippets of financial information covering the maintenance period" and therefore fails to establish that a CR 60 motion to vacate the judgment would have been successful. Additionally, Marie argues that Duane cannot show that she will not suffer a substantial hardship because Marie would have paid off her mortgage and accumulated retirement funds earning interest, that she could live off of if Duane had been paying $10,000. Marie has the better argument.

A party moving to vacate under CR 60(b)(1) must show that "(1) there is substantial evidence supporting a prima facie defense; (2) the failure to timely appear and answer was due to mistake, inadvertence, surprise, or excusable neglect; (3) the defendant acted with due diligence after notice of the default judgment; and (4) the plaintiff will not suffer a substantial hardship if the default judgment is vacated." Ha v. Signal Elec., Inc., 182 Wn. App. 436, 448-49, 332 P.3d 991 (2014).

Even if Duane can show that his failure to appear was because Marie agreed to modify the agreement, the record lacks evidence supporting his defense that the spousal maintenance obligation should have been lower. Duane provided limited financial information for only 2012 and 2015. Duane argues that his net income is much lower than his gross income, but concedes that Boeing pays for his housing,

transportation, and taxes in Singapore. While his net income may be lower, that is after many living expenses have been paid. Duane has not provided his bank account information, paystubs, or evidence of his expenses. Therefore, Duane cannot show that, if he moved to vacate the default judgment under CR 60(b)(1), a lower spousal obligation would have resulted than the one ordered in the default judgment.

Duane also contends that even if he did not succeed in vacating the default degree, he would have sought modification of the spousal support under RCW 26.09.170. Duane claims that he "could have shown that the fact that his net income could not satisfy the ordered $10,000 spousal maintenance obligation was a 'substantial change in circumstances' warranting modification."

A decree for spousal support may be modified "only upon a showing of a substantial change of circumstances." RCW 26.09.170(1)(b). Duane, however, cites only his own statement in an e-mail to Marie as support for his argument that he could not satisfy the $10,000 spousal maintenance. In an e-mail to Marie from January 2016, Duane states:

> I'm not sure why you think I even make 10K month—you have seen the deposit to account for the last 8 years and if you add up the deposit net pay I never made 10K a month. How do you expect to receive 10K a month. You also told me that you and the court agree [sic] to 7K and I told you I would split my paycheck to you.

Duane did not provide paystubs or records of his bank accounts and therefore cannot show that there was a substantial change of circumstances.

Duane fails to establish that the trial court abused its discretion by declining to excuse his spousal support obligations under the decree on the basis of equitable defense of estoppel.

B.

Duane next argues that the trial court erred when it declined to find that the doctrine of laches applied. To establish laches, the defendant has the burden of proving: "(1) the plaintiff had knowledge of the facts constituting a cause of action or a reasonable opportunity to discover such facts; (2) there was an unreasonable delay in commencing the action; and (3) there is damage to the defendant resulting from the delay." Sanborn, 55 Wn. App. at 127. If the parties are in the same condition, then the doctrine of laches does not apply. Sanborn, 55 Wn. App. at 128. A trial court does not have unfettered discretion to retrospectively relieve a spouse of past due support payments. Hunter, 52 Wn. App. at 268.

Duane contends that Marie should be estopped by laches from seeking enforcement of the back maintenance and interest because "(1) Marie had knowledge of the facts constituting a cause of action or a reasonable opportunity to discover such facts; (2) there was an unreasonable delay in commencing the action; and (3) Duane suffered damage from the delay." Duane contends that seven years was an unreasonable delay in commencing the action, and Marie's actions allowed interest to accrue, resulting in financial damage to Duane because she "intentionally misled Duane 'to live more comfortable month to month' than he would have had he known she would subsequently seek over $750,000 from him—$300,000 of which was interest alone."

Marie concedes that she knew she could seek enforcement, but explains that since Duane was living in Singapore, "it would have been extremely difficult to personally serve him with a motion for contempt." But Marie contends that she did not seek enforcement because she was receiving partial payment and that she only sought

10

enforcement when Duane stopped making partial maintenance payments because earlier enforcement would have been "expensive, adversarial, and risked Duane cutting off support entirely." Marie also tried to reach a settlement with Duane before moving to enforce the judgment. Marie's reasons for not enforcing her judgment were reasonable.

In addition, Marie's delay was not unreasonable. Marie brought her action within 7 years—within the 10-year statute of limitation for the enforcement of judgments. RCW 6.17.020; In re Marriage of Capetillo, 85 Wn. App. 311, 317, 932 P.2d 691 (1997). "Absent unusual circumstances, the doctrine of laches should not be invoked to bar an action short of the applicable statute of limitation." Hunter, 52 Wn. App. at 270. Marie was receiving partial payments and commenced enforcement almost immediately after Duane stopped paying maintenance.

Finally, Duane fails to demonstrate he was damaged by Marie's delay. While Duane argues that the judgment includes over $300,000 in interest, he "cannot be said to be 'damaged' simply by having to do now what he was legally obligated to do years ago." Hunter, 52 Wn. App. at 271. "Each installment of spousal maintenance becomes a separate judgment and bears interest from the due date. A court has no power to provide for payment of overdue maintenance without interest." Sanborn, 55 Wn. App. at 129-30 (internal citation omitted). Duane's argument that he is damaged by the requirement to pay interest necessarily fails.

Instead, Duane must demonstrate some change in position that would make it inequitable to allow Marie to enforce her claim. Hunter, 52 Wn. App. at 271. Duane does not argue a change in position, but instead asserts that he would have sought to modify the maintenance or vacate the decree if Marie had sought enforcement earlier.

11

But Duane fails to demonstrate that if he had petitioned the court for modification of the spousal support obligation, that a court would have modified the order. "[A]n intervening change of position on the part of the defendant, making it inequitable to enforce the claim" must be shown. Hunter, 52 Wn. App. at 270. Duane did not cite any change in his income, or additional expenses he incurred that could justify a modification. Duane provided only his 2012 and 2015 tax returns for the record, which fail to establish grounds for modification or evidence a major financial obligation undertaken.

Duane fails to establish that the trial court abused its discretion by declining to excuse his spousal support obligations under the decree on the basis of laches.[3]

### IV.

RCW 26.18.060 allows the prevailing party to recover reasonable attorney fees and costs on appeal in any action to enforce a support or maintenance order. Hunter, 52 Wn. App. at 273-74. Under RAP 18.1(a), the court may grant reasonable attorney fees or expenses if an applicable law grants to a party the right to recover those fees.

Duane argues that the trial court erred in awarding Marie fees. We disagree. Marie was the prevailing party below, therefore she was entitled to fees under RCW 26.18.060. Marie is also entitled to reasonable attorney fees on appeal as the prevailing party in this action.

---

[3] Duane also raises issues concerning part performance, an alleged CR 2A agreement, and ERISA. Because these claims were not raised below, we decline to address them on appeal. RAP 2.5(a).

We affirm.

_Mann, ACJ_

WE CONCUR:

_Leach, J._                              _Dwyer, J._