# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re: | No. 51164-9-II |
| ROSABLANCA BEINHAUER, | |
| Respondent, | |
| v. | |
| MARK R. BEINHAUER, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, A.C.J. — Mark R. Beinhauer filed a motion to hold his former wife, Rosablanca, in contempt of court for not paying six years of owed child support. After the superior court denied his motion, Mark's attorney issued a writ of garnishment—without court permission—against Rosablanca's portion of his retirement accounts. The superior court quashed the writ of garnishment and ordered Mark to pay Rosablanca's attorney fees and CR 11 sanctions.

Mark appeals the superior court's order quashing the writ of garnishment, as well as the superior court's order denying his motion for contempt. He also appeals the superior court's award of attorney fees to Rosablanca, and its denial of his request for attorney fees. We affirm.

FACTS

The marriage between Rosablanca and Mark Beinhauer[1] was dissolved in 2000. As part of the dissolution decree, the superior court awarded Rosablanca half of Mark's retirement benefits and half of Mark's Voluntary Investment Plan savings, with the relevant time period between December 1990 and September 1998.

In 2004, the superior court entered an order modifying Rosablanca and Mark's parenting plan of their then 12 year old son.[2] The superior court also entered a final order of child support, which ordered Rosablanca to pay Mark $200 in monthly child support beginning June 1, 2004. The child support order directed Rosablanca to make her child support payments directly to Mark.

Mark applied for the Washington State Department of Social and Health Services Department of Child Support's (DCS) enforcement services in 2004. He withdrew his request for those services later that year. Approximately 11 years later, in March 2015, Mark reapplied for DCS enforcement services and claimed that Rosablanca owed him $13,856.72 in unpaid child support.

Rosablanca told the DCS Board that she made an " 'alternative support arrangement' " with Mark and gave him $5,000 and a $10,000 promissory note to satisfy her child support obligation. Clerk's Papers (CP) at 12. The Board ruled that an out-of-court agreement between Mark and Rosablanca did not change the court order, and found that Rosablanca did not show that she had made child support payments to Mark. Therefore, Rosablanca owed $13,856.72 for unpaid

---

[1] Because multiple persons in this appeal share the last name Beinhauer, we refer to the parties by their first names. We mean no disrespect.

[2] The parties' original parenting plan is not a part of the appellate record.

child support between 2004 and January 2010 (when their son turned 18 years old). DCS ruled that if Rosablanca could not pay this debt at once, she could set up a payment plan with her support enforcement officer.

In January 2016, Rosablanca received a notice of withholding from DCS, which explained that DCS had directed her employer to withhold $200 from her monthly wages to satisfy her child support debt. DCS records showed monthly $200 payments toward Rosablanca's debt beginning in March 2016 and current through April 2017.

Nonetheless, in January 2017, Mark filed an amended motion[3] for a contempt hearing, in which he alleged that Rosablanca had failed to comply with the 2004 child support order. Mark claimed that Rosablanca had only paid him $2,200 in child support after the entry of the order, and that she now owed him $13,600 in past due child support. Mark also claimed interest in the amount of $13,647.87 and requested attorney fees.

In response, Rosablanca submitted a declaration in which she claimed that she paid the child support in full in 2004 by giving Mark a $15,000 cash payment. Rosablanca explained that she had entered into a payment plan with the DCS to pay off the $13,856.72 balance and that $200 of her monthly wages had been withheld to satisfy her child support debt beginning in January 2016. Rosablanca also claimed that Mark sent her a letter in June 2015 offering to "call it even" if she gave up her claim to Mark's retirement. CP at 68.

Mark and Rosablanca's son also submitted a supporting declaration stating that he personally witnessed Rosablanca pay Mark "a large stack of cash to settle the child support" when

---

[3] The original motion is not part of the appellate record.

he was 12 years old. CP at 64. Their son did not know the exact amount of money exchanged, but he heard his parents discuss the number $15,000. Their son was certain that this conversation was about child support.

Mark submitted a reply declaration in which he denied that Rosablanca ever paid him $15,000 in cash to satisfy her child support obligation. Mark also prepared and filed a revised schedule of payments which computed Rosablanca's owed child support and interest. This revised schedule showed that Rosablanca started making $200 monthly payments in February 2016.

On June 6, 2017, the superior court denied Mark's motion for an order of contempt.[4] The superior court also denied Mark's requests for interest and attorney fees.

On June 9, Mark filed a motion to revise the superior court's order on contempt. The superior court denied Mark's motion for revision in July.

After the superior court denied Mark's motion for revision, Mark's attorney issued writs of garnishment to Mark's Employee Retirement Plan and his Voluntary Investment Plan, which stated that $27,273.97 was to be withheld to satisfy Rosablanca's debt to Mark. The writs concluded with the following paragraph:

> This writ is issued by the undersigned attorney of record for the respondent under the authority of chapter 6.27 of the Revised Code of Washington, and must be complied with in the same manner as a writ issued by the clerk of the court.

CP at 90, 93.

Rosablanca served Mark with a motion to quash his writs of garnishment on September 12. However, she did not file her motion with the court until October 3. Nonetheless, in September,

---

[4] The order of contempt shows that a hearing on the motion was held in June 2017, but Mark did not designate the transcript of this hearing as part of the record for review.

the superior court entered an order staying the writs of garnishment that Mark's attorney had issued. The court also ordered Mark to appear in person and show cause why CR 11 sanctions should not be ordered and attorney fees granted. Rosablanca filed a declaration in support of her motion to quash the writ of garnishment. She again explained that she had worked out a payment plan with DCS and was current on her support payments to DCS. She again claimed that Mark had sent her a letter in June 2015 offering to forgive her child support debt if she gave up her right to his retirement.

On October 3, Mark filed a motion to vacate the superior court's order staying the writs of garnishment. He also asked the court to strike Rosablanca's motion to quash the garnishment, and to award him reasonable attorney fees and sanctions. Mark argued that Rosablanca had violated superior court rules by serving Mark with her motion to quash on September 12, but not filing the motion with the court until October 3. Mark claimed that this violated CR 5(d), which requires all pleadings to be filed with the court before service on the other party, or else promptly thereafter. CR 5(d)(1).

On October 6, Mark filed an objection to the portion of Rosablanca's declaration discussing his June 2015 settlement offer. Mark argued that this settlement offer was inadmissible under ER 408, and asked the superior court to strike the statement from Rosablanca's declaration.[5] Mark also asked the superior court to impose CR 11 sanctions against Rosablanca. The superior court did not rule on this objection.

---

[5] The superior court's ruling on this motion is not in the record.

On October 24, after hearing arguments, the superior court granted Rosablanca's motion to quash the writs of garnishment. The court also precluded Mark from pursuing any further collection action against Rosablanca absent further order of the superior court. Finally, the superior court awarded Rosablanca $1,450 in attorney fees and $500 in sanctions.

Mark filed a motion to revise the superior court order quashing his writs of garnishment. A hearing on Mark's motion for revision was held on November 9. The superior court denied Mark's motion to revise and awarded Rosablanca an additional $720 in attorney fees. In its oral ruling, the superior court noted that DCS held a hearing on this case in 2015 and that $200 had been withheld from Rosablanca's monthly earnings to satisfy the debt beginning in 2016.

Mark appeals.

ANALYSIS

A.    ORDER ON CONTEMPT[6]

1.    Standard of Review

We review the superior court's decision in a contempt proceeding for an abuse of discretion. *In re Marriage of Eklund*, 143 Wn. App. 207, 212, 177 P.3d 189 (2008). The court abuses its discretion when its decision is based on untenable grounds or reasons. *Id.* On review, we do not weigh conflicting evidence or substitute our judgment for that of the trial court. *In re Rich*, 80 Wn. App. 252, 259, 907 P.2d 1234, *review denied*, 129 Wn.2d 1030 (1996). "A finding

---

[6] The parties dispute which of the superior court orders are subject to appellate review because Mark only designated the superior court's November 9 order on revision in his notice of appeal; however, in his briefing, Mark assigned error to every superior court order resulting from his efforts to collect unpaid child support from Rosablanca in 2017. We review Mark's assignments of error to the extent it prejudicially affected the superior court's ruling quashing his writs of garnishment under RAP 2.4(b).

of contempt will be upheld if the appellate court can find any proper basis for the finding." *Trummel v. Mitchell*, 156 Wn.2d 653, 672, 131 P.3d 305 (2006).

> 2.      The Superior Court did not Abuse its Discretion

Contempt of court is defined in part as intentional "[d]isobedience of any lawful judgment, decree, order, or process of the court." RCW 7.21.010(1)(b). In the context of parental support, "[a]n attempt by a parent . . . to refuse to pay ordered child support . . . shall be deemed bad faith and shall be punished by the court by holding the party in contempt of court and by awarding to the aggrieved party reasonable attorneys' fees and costs." RCW 26.09.160(1). The party moving for contempt carries the burden of proving contempt by a preponderance of the evidence. *In re James*, 79 Wn. App. 436, 442, 903 P.2d 470 (1995).

Mark appears to argue that the superior court abused its discretion in denying his motion for contempt because Rosablanca's child support obligations became vested judgments bearing interest once due. He also argues that Rosablanca was not entitled to equitable relief from her past due child support obligations.

Mark is correct that delinquent child support payments become vested judgments as they fall due. *See In re Marriage of Hunter*, 52 Wn. App. 265, 268, 758 P.2d 1019 (1988), *review denied*, 112 Wn.2d 1006 (1989). And generally those accumulated judgments are not subject to retrospective modification. *Id.* However, here, Mark reopened his account with DCS's enforcement services in 2015. And at the time Mark filed his motion for contempt, Rosablanca was current on her payment plan with DCS and $200 of her monthly wages had been garnished in order to satisfy this debt. Mark never disputed that he already sought enforcement through DCS or that Rosablanca was current on her payment plan with DCS. In light of this evidence, it was

not untenable for the superior court to rule that Rosablanca had not refused to pay the child support she owed and, therefore, had not intentionally disobeyed a lawful judgment.[7]

3.      Attorney Fees

Mark also argues that the superior court should have awarded him attorney fees because he should have prevailed in his motion for contempt. We disagree.

We review the reasonableness of attorney fees for an abuse of discretion. *Gander v. Yeager*, 167 Wn. App. 638, 645, 282 P.3d 1100 (2012). Under RCW 26.18.160, the prevailing party in an action to enforce a support or maintenance order is entitled to a recovery of costs, including attorney fees. However, given that the superior court did not abuse its discretion in denying Mark's motion for contempt, we hold that it did not abuse its discretion in denying his request for attorney fees.

B.      ORDER QUASHING MARK'S WRITS OF GARNISHMENT

Mark argues that the statutes on garnishment are ambiguous as to whether an attorney may issue a writ in superior court, and therefore, the superior court erred in quashing the writs his attorney issued without court permission. We disagree.

1.      Standard of Review

The garnishment process is statutorily governed. Chapter 6.27 RCW; *Bartel v. Zucktriegel*, 112 Wn. App. 55, 64, 47 P.3d 581 (2002). Statutory construction is a question of law that we review de novo. *Id.*

---

[7] Mark also devotes substantial argument contending that the superior court could not retroactively modify the 2004 child support order based on equitable estoppel or laches. Rosablanca never requested, and the superior court never granted such relief. Thus, we do not consider any assignment of error on this basis.

2. RCW 6.27 Does Not Authorize The Attorney's Issuance of a Writ

RCW 6.27.020 governs the issuance of a writ of garnishment, and provides that "[t]he clerks of the superior courts and district courts of this state may issue writs of garnishment returnable to their respective courts for the benefit of a judgment creditor who has a judgment wholly or partially unsatisfied in the court from which the garnishment is sought." RCW 6.27.020(1). The statute also provides that "[w]rits of garnishment may be issued in district court with like effect by the attorney of record for the judgment creditor, and the form of writ shall be substantially the same as when issued by the court except that it shall be subscribed only by the signature of such attorney." RCW 6.27.020(2).

Mark argues that this statute is ambiguous because it does not explicitly prohibit an attorney from issuing a writ of garnishment in superior court. However, a statute is only ambiguous if it susceptible to two or more reasonable interpretations. *HomeStreet, Inc. v. Dep't. of Revenue*, 166 Wn.2d 444, 452, 210 P.3d 297 (2009).

RCW 6.27.020 clearly states that the clerks of the superior courts and district courts may issue writs of garnishment, and that an attorney may issue a writ of garnishment in district court. The statute's silence as to whether an attorney may issue a writ of garnishment in superior court cannot reasonably be interpreted as permission to do so. *See Watkins v. Peterson Enters., Inc.*, 137 Wn.2d 632, 640, 973 P.2d 1037 (1999) ("Garnishment is a statutory remedy that requires strict adherence to the procedures expressly authorized by statute.").

Mark's reliance on RCW 6.27.100, which governs the form of a writ of garnishment, is equally unavailing. He appears to argue that RCW 6.27.100 renders RCW 6.27.020 ambiguous

because RCW 6.27.100 requires particular language when an attorney issues a writ of garnishment, and also requires particular language when the garnishment is to collect unpaid child support.

Former RCW 6.27.100 (2012)[8] states:

(1) A writ issued for a continuing lien on earnings shall be substantially in the form provided in RCW 6.27.105. All other writs of garnishment shall be substantially in the following form, but if the writ is issued under an order or judgment for child support, the following statement shall appear conspicuously in the caption: "This garnishment is based on a judgment or order for child support"; and if the writ is issued by an attorney, the writ shall be revised as indicated in subsection (2) of this section.

Mark argues that because these different form requirements are discussed in the same section, an attorney can impliedly issue a writ of garnishment to collect child support in superior court without court permission. The plain language of former RCW 6.27.100 does not support this interpretation.

The statute outlines separate, conditional events that dictate the required form for a writ of garnishment. If the writ is issued under an order or judgment for child support, then it must contain the statement "[t]his garnishment is based on a judgment or order for child support" in the caption. Former RCW 6.27.100(1). And if the writ is issued by an attorney, it must be in a particular form outlined in subsection (2) of the statute. Former RCW 6.27.100(1). These varying form requirements do not impliedly authorize an attorney to issue a writ of garnishment in superior court without court permission. Because RCW 6.27.020 and former RCW 6.27.100 are not susceptible to two or more reasonable interpretations, they are not ambiguous, and Mark's argument on this basis fails.

---

[8] RCW 6.27.100 has been amended since the events of this case transpired. The amendments do not materially affect the statutory language relied on by this court.

Mark also argues that the writs should not have been quashed, even if issued improperly, because he was merely trying to avoid duplicitous paperwork and alleviate the burden to the clerk's office. Mark's concern for the court clerk is not a basis to deviate from express statutory procedures.

Mark further argues that quashing the writs of garnishment increased the administrative burden on the garnishee, which contravened the legislative intent of the garnishment statutes. The legislature recognizes that a garnishee defendant is not responsible for the situation leading to the garnishment of a debtor's wages, and that the "state should take whatever measures that are reasonably necessary to reduce or offset the administrative burden on the garnishee consistent with the goal of effectively enforcing the debtor's unpaid obligations." RCW 6.27.005. However, this does not authorize Mark to take measures that he perceives as reasonably necessary to offset the administrative burden on the garnishee. And the " 'administrative burden' on a garnishee refers to the adversarial nature of the garnishment proceeding," not the amount of resulting paperwork in the clerk's office. *Watkins*, 137 Wn.2d at 638.

Contrary to Mark's argument, RCW 6.27.020 and former RCW 6.27.100 do not authorize attorneys to issue writs of garnishment in superior court. And we are not persuaded by Mark's other arguments.

3.      Attorney Fees

Mark argues that the superior court should have granted him attorney fees in responding to Rosablanca's motion to quash the writs of garnishment because he should have been the prevailing party. This argument fails because, as explained above, Mark should not have prevailed.

11

Mark's argument also fails because he claims attorney fees under RCW 26.18.100, which does not authorize attorney fees, but instead governs the wage assignment order form. And he provides no support for his argument that defending against Rosablanca's motion to quash his improperly issued writs of garnishment is equivalent to a proceeding challenging his right to collect owed child support. Thus, he fails to show that the attorney fees provision of RCW 26.18 should apply at all. Accordingly, Mark's argument fails.

Mark further argues that the superior court erred in awarding Rosablanca attorney fees and sanctions because she should not have prevailed in her motion to quash the writs of garnishment. This argument fails because the superior court did not err in granting Rosablanca's motion.

C.      OTHER ARGUMENTS

1.      Evidence of Settlement Offer

Mark argues that the superior court should have granted his objection to Rosablanca's reference to his 2015 settlement offer in her declaration. Mark relies on ER 408 for support, which provides that evidence of an offer to compromise is inadmissible in a civil case to prove liability for or the invalidity of the claim or its amount.

We review a superior court's evidentiary rulings for an abuse of discretion. *Mut. of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*, 178 Wn. App. 702, 728, 315 P.3d 1143 (2013), *review denied*, 180 Wn.2d 1011 (2014). Therefore, we will only overturn the lower court's ruling on admissibility of evidence if its decision was manifestly unreasonable, or based on untenable grounds or reasons. *Id.*

Further, if we conclude that the trial court made an erroneous evidentiary ruling, "the question on appeal becomes 'whether the error was prejudicial, for error without prejudice is not

grounds for reversal.' " *Id.* at 728-29 (quoting *Brown v. Spokane County Fire Prot. Dist. No. 1*, 100 Wn.2d 188, 196, 668 P.2d 571 (1983)). An error is harmless if it does not affect the outcome of the case. *Id.* at 729. "[I]mproper admission of evidence constitutes harmless error if the evidence is cumulative or of only minor significance in reference to the evidence as a whole." *Hoskins v. Reich*, 142 Wn. App. 557, 570, 174 P.3d 1250, *review denied*, 164 Wn.2d 1014 (2008).

Here, even if the superior court erred in not granting Mark's objection, this error was harmless. Mark argues that this evidence "may well have played an impermissible part" on the outcome of this case, but the record does not support his contention. Br. of Appellant at 26. The record shows that the superior court granted Rosablanca's motion to quash the writs of garnishment because "[t]here [was] no legal authority for this garnishment." Verbatim Report of Proceedings (Oct. 24, 2017) at 2. In its oral ruling, the superior court explained that Mark could not issue a writ of garnishment without going through a court clerk. Therefore, the record shows that the superior court based its ruling on Mark's failure to follow express statutory procedures, not the evidence of this 2015 settlement offer. Because Mark fails to show prejudice resulting from this evidentiary ruling, his claim fails.

2.    Timing of Motion

Next, Mark argues that Rosablanca violated Pierce County local rules by filing her motion after the notice of hearing, instead of simultaneously. We do not consider this assignment of error because Mark raises his challenge under Pierce County local rules for the first time on appeal and fails to show, or even argue, that the claimed error is of the type allowed to be raised for the first time on appeal. *See* RAP 2.5(a).

Mark also argues that Rosablanca violated CR 5(d)(1) by filing her motion to quash the writs of garnishment three weeks after the superior court stayed Mark's writ of garnishment. CR 5(d)(1) states that "all pleadings and other papers after the complaint required to be served upon a party shall be filed with the court either before service or promptly thereafter."

Mark does not explain whether three weeks constitutes "promptly thereafter" under CR 5(d)(1). And he does not argue what the appropriate remedy should have been for Rosablanca's noncompliance with this court rule. Assuming that Mark assigns error to the superior court's order denying his motion to vacate Rosablanca's motion, this argument fails.

Dismissal is an appropriate remedy when the record shows " '(1) the party's refusal to obey [a court] order was willful or deliberate, (2) the party's actions substantially prejudiced the opponent's ability to prepare for trial, and (3) the trial court explicitly considered whether a lesser sanction would probably have sufficed. ' " *Will v. Frontier Contractors, Inc.*, 121 Wn. App. 119, 129, 89 P.3d 242 (2004) (quoting *Rivers v. Wash. State Conference of Mason Contractors*, 145 Wn.2d 674, 686, 41 P.3d 1175 (2002)), *review denied*, 153 Wn.2d 1008 (2005). Mark does not explain why dismissal was an appropriate remedy here. Instead, he claims that he was prejudiced by the late service because he did not know at the motion hearing whether Rosablanca "really planned to stand by [her] arguments," or whether she planned to concede at the hearing. Br. of Appellant at 27. However, it is unclear how Mark would have been prejudiced had Rosablanca surprised him at the motion hearing by conceding that her motion should not have been granted.

Because Mark fails to show that dismissal was an appropriate remedy for Rosablanca's noncompliance with CR 5(d), his claim fails.[9]

D.      ATTORNEY FEES

Mark asks this court to award attorney fees under RCW 26.18.160, which entitles the prevailing party to recover costs and attorney fees in any action to enforce a support or maintenance order. Because Mark does not prevail on appeal, he is not entitled to attorney fees under RCW 26.18.160.

Rosablanca also requests attorney fees and costs "for all the reasons" that the superior court awarded her fees below. Br. of Resp't at 13. Because the basis for the superior court's award of attorney fees is unclear from the record, we deny this request.

A party may recover attorney fees on appeal if applicable law grants the party the right to recover reasonable attorney fees or expenses before this court. RAP 18.1(a). However, in order to recover attorney fees on appeal, the requesting party must devote a section of its opening brief to the request for the fees or expenses. RAP 18.1(b).

Rosablanca does not cite any applicable law that grants her the right to recover reasonable attorney fees on appeal. And her reference to "all the reasons" of the superior court does not lend any clarity because the superior court never explained its basis for awarding attorney fees to begin

---

[9] Mark also assigns error to the superior court's orders on revision and the order staying the writ of garnishment until the hearing on Rosablanca's motion to quash. Because Mark provides no argument to these individual assignments of error, we decline to consider them. *See* RAP 10.3(a)(6). Also, the order temporarily staying the writ of garnishment is moot in light of the superior court's subsequent order quashing the writ of garnishment. *See State v. Gentry*, 125 Wn.2d 570, 616, 888 P.2d 1105 (explaining that an issue is moot if we can no longer provide effective relief), *cert. denied*, 516 U.S. 843 (1995).

with.[10]  Br. of Resp't at 13.  Therefore, we hold that Rosablanca's request for attorney fees is insufficient under RAP 18.1, and we decline to award her attorney fees and expenses on appeal.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, A.C.J.
Lee, A.C.J.

We concur:

_____
Worswick, J.

_____
Sutton, J.

---

[10] Rosablanca never cited to any applicable law in her request for attorney fees to the superior court.  The superior court also did not reference any applicable law when awarding attorney fees. The court granted Rosablanca's request for CR 11 sanctions, but this was separate from her award of attorney fees.